CARROLL *v.* OWEN.

1. LIBEL AND SLANDER—EVIDENCE—MALICE.

Upon testimony tending to prove that defendant, who had discharged plaintiff from her employ as a house servant, told a tenant, who was going to occupy the same house after defendant's departure, that plaintiff was not clean about her house work, that she drank, and her work would not

be satisfactory, and afterwards, learning that plaintiff had been employed, wrote giving additional reasons why the plaintiff should not be retained, and offering to disclose further facts, the questions of good faith, malice, and privilege were for the jury.

2. SAME—PRIVILEGED COMMUNICATIONS—MASTER AND SERVANT.
   One who rents a house for the season, to a person who proposes to retain a part of defendant's servants, is entitled, in good faith, to advise the tenant as to their qualifications, habits, and morals.

Error to Wayne; Van Zile, J.   Submitted June 18, 1913.   (Docket No. 6.)   Decided March 26, 1914.

Case by Delia Carroll against Blanche Owen for libel.   Judgment for defendant on a directed verdict. Plaintiff brings error.   Reversed.

*McHugh, Gallagher, O'Neil & McGann*, for appellant.

*Gray & Gray (Cornelius & Ring*, of counsel), for appellee.

BIRD, J.   This is a suit begun against the defendant for both libel and slander.   A verdict was directed for the defendant, and the plaintiff has brought error.

It appears that on May 24, 1911, the plaintiff became a servant in defendant's home in the city of Detroit, and continued in such employment until September 24th of the same year, when she was informed by the defendant that her services would be no longer needed, because her son was going away to school, and her daughter was going to Europe.   Before leaving, defendant gave her a recommendation.   On October 21st plaintiff, through an employment agency, secured a position with a Mrs. Lancashire, of Alma. When she arrived there she learned that at the end

of three weeks Mrs. Lancashire was going to take the defendant's house in Detroit for the winter season, and she engaged her to go with her. Within a week thereafter, Mrs. Lancashire informed plaintiff that she would not need her after she came to Detroit, whereupon plaintiff left her employ. After returning to Detroit plaintiff learned that defendant, in discussing the servants in her employ with Mrs. Lancashire, had said to her that plaintiff was not clean with her work; that she drank; that she did not think Mrs. Lancashire would care for plaintiff's work, nor be pleased with her, nor care to keep her. Later, when defendant learned that plaintiff had gone to Alma to work for Mrs. Lancashire, she addressed a letter to Mrs. Lancashire in the following words:

"I was surprised when Delia come in Sunday evening and said she was going to you. I did not think you would take her on account of what I told you. If she had told me the truth I would not think so much about it. She is not quite right. Her own friends say so too. The day she came into the house she took a violent dislike to my waitress, which she never got over to the day she left. She got on somewhat better with the cook as they were both Catholics. I warn you not to believe one word she says about my waitress. If I could meet you down town I would tell you more. Mr. Owen did not think it would be right of me to know all this and not tell you."

Upon receiving this information, the plaintiff commenced this suit for libel and slander against defendant. At the trial of the cause, after plaintiff had made her case, the trial court directed a verdict in behalf of the defendant, on the ground that the communications were privileged, and because there was no evidence of malice on the part of the defendant, and hence no question for the jury. There is no controversy between counsel about the facts, neither is there any material variance between them as to the

law.  Both admit that the communications were quali-
fiedly privileged, and both agree that the burden is
upon the plaintiff to show malice on the part of the
defendant.  The question as to whether the evidence
is sufficient to submit to the jury on the question of
malice is the sole question about which they disagree.

Mrs. Lancashire having rented defendant's house
for the winter season, and wishing to retain some or
all of the servants, it was defendant's right to inform
her as to their qualifications, morals, and habits, if
she did so in good faith.  This she did on the 21st day
of October.  At that time she disclosed enough to
Mrs. Lancashire to indicate that plaintiff was an un-
desirable servant.  Had the matter ended there, I
think the record would be barren of any evidence of
malice on the part of the defendant.  But later, when
she learns that plaintiff has gone to Alma to work for
Mrs. Lancashire, she writes her a letter, calling her
attention to what she had already told her in conver-
sation, and giving additional reasons why plaintiff
should not be retained by her.  In doing this, defend-
ant may have been actuated by the best of motives,
but the fact that she writes a letter, in which she
refers to what she has previously told her concerning
plaintiff, the fact that she furnishes additional rea-
sons to show that plaintiff is an undesirable servant,
the fact that she sends the communication without re-
quest, and offers to communicate more when she sees
her "down town" opens the way for an inference to
be drawn therefrom that she was going beyond the
limits of good faith in making communications to
Mrs. Lancashire concerning plaintiff.  This view· is
further strengthened by one of the opening sentences
of her letter:

"I did not think you would take her on account of
what I told you."

This statement is open to the inference that defend-

ant was rather more concerned about plaintiff's retention than she was about communicating to Mrs. Lancashire the real facts and allowing her to act her own pleasure in the matter.

We do not feel that we can say that there is no evidence in the record from which an inference of malice might be drawn. We are therefore of the opinion that the question was one for the determination of a jury.

The judgment is reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.