SCHECHET *v.* KESTEN.

1. LIBEL AND SLANDER—PLEADING—ABSOLUTE PRIVILEGE—PHYSICIANS AND SURGEONS—HOSPITAL.

Issue of absolute privilege *held,* raised by defendant's answer with respect to communication he wrote, as chairman of department of surgery of a hospital, to credentials and executive committee of the hospital detailing various reasons why plaintiff osteopath had been placed under supervision of minor surgical procedures and other cases that might become surgical in nature and stating plaintiff should be suspended from the staff, which letter was written in response to plaintiff's request for specific list of charges.

2. TRIAL — PRETRIAL SUMMARY — ABSOLUTE PRIVILEGE — EXPRESS WAIVER.

Fact that pretrial summary indicated defense was qualified privilege is not controlling when pleaded facts raise issue of absolute

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  33 Am Jur, Libel and Slander § 248.
   Pleading or raising defense of privilege in defamation action.   51 ALR2d 552.
[3]  5 Am Jur 2d, Appeal and Error § 839.
[4, 5]  33 Am Jur, Libel and Slander § 125.
[6]  53 Am Jur, Trial § 88.

privilege and that issue is not expressly waived by waiver recorded in the pretrial summary (GCR 1963, 301.3).

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—LIBEL AND SLANDER —ABSOLUTE PRIVILEGE—PLEADING—MOTIONS.

Issue of absolute privilege in communication written by defendant was before trial court, where facts raising it were pleaded, and defendant interposed   motion for directed verdict based thereon at close of plaintiff's proof, which motion was renewed at the close of proof, and the same claim was reasserted in defendant's motion for judgment notwithstanding the verdict, and appeal taken presented issue to Court of Appeals.

4. LIBEL AND SLANDER—CONSENT TO PUBLICATION.

Publication of false and defamatory matter of another is absolutely privileged if the other consents thereto.

5. SAME—ABSOLUTE PRIVILEGE—CONSENT.

Alleged libel of plaintiff by defendant in detailing why plaintiff osteopath should be disciplined, made in response to plaintiff's request for specification of charges, was absolutely privileged so far as persons involved in sending the communication were concerned, where defendant was the chairman of department of surgery of hospital and detailed to credentials and executive committee of the hospital why plaintiff should be placed under supervision and also that he should be suspended from the staff.

6. TRIAL—CONDUCT OF JUDGE TOWARD COUNSEL.

Disparaging and belittling remarks by the court should not be made to counsel in the presence of the jury (Canons of Judicial Ethics Nos 5, 10).

Appeal from Genesee; Parker (Donn D.), J.  Submitted Division 2 February 8, 1966, at Lansing. (Docket No. 177.)  Decided April 26, 1966.  Leave to appeal granted by Supreme Court August 27, 1966.  See 378 Mich 729.  Appeal dismissed May 12, 1967.

Declaration by Isadore A. Schechet against Heinrich H. Kesten for damages from alleged libel and slander.  Interrogatories ordered answered.  Defendant appeals.  Reversed and remanded (see 372

Mich 346). Verdict and judgment for plaintiff. Defendant appeals. Reversed and judgment for defendant entered in Court of Appeals.

*Howard J. Bueche,* for plaintiff.

*Joseph & Joseph (Joseph R. Joseph,* of counsel), *Herbert Milliken, Jr., Philip Elliott,* and *Sanford Kesten,* for defendant.

QUINN, J. In an action for libel, plaintiff recovered a substantial jury verdict against defendant in Genesee county circuit court. Judgment entered thereon. Defendant filed timely motions for a new trial and for judgment notwithstanding the verdict which were denied. Defendant appeals and requests this Court to set aside the judgment and dismiss the suit. In the alternative, defendant requests a new trial. Defendant assigns several reasons as basis for this relief, one of which is that the claimed libel is entitled to absolute privilege. Facts pertinent to an understanding of this contention and its appropriate resolution are as follows:

April 1, 1955, plaintiff, an osteopath, made written application for staff privileges at Flint General Hospital. In his application, plaintiff agreed to abide by all rules and regulations laid down in the constitution and by-laws of the hospital. Relevant portions of such rules and regulations appear below.[1] During the time of the occurrences which

---

[1] Section 6 of article 2 of rules and regulations, department of surgery, provides in part: "the surgical privileges of any doctor may be summarily suspended as to the performance of any surgical procedure, by the superintendent or chairman of the department of surgery, for any cause which any such official may deem to be for the best interest of the patient and the hospital."

Article 13 of the by-laws provides in part:

"*Sec. 1.* Any member of the staff, having complied with the procedural requirements of these by-laws and rules and regulations of the hospital and/or any department of the hospital, and being refused privileges or advancements, and any member suffering penalty

culminated in this lawsuit, defendant was chairman of the department of surgery of Flint General Hospital; J. J. Bernhard was chairman of its credentials committee; M. Polk was chairman of the executive committee; and Harry Whitlow was administrator of the hospital. January 2, 1962, defendant sent plaintiff the following letter with copies to Polk and Whitlow: (*Exhibit 18*)

"I. A. Schechet, D.O.                January 2, 1962
G-3046 W. Pierson Rd.
Flint, Michigan
*Dear Dr. Schechet,*

"After review of your work in the department of surgery during the past year, it is directed that until further notice that you have supervision on all of your surgical procedures and in all other cases that may be of a possible surgical nature as determined by the chairman of the department of surgery and/or department of medicine.

"It is my considerate opinion that your judgment is questionable in this type of work and that this decision is being made for the protection of the hospital.

_____

or loss of privileges may, feeling justly aggrieved, appeal to the board of trustees for final determination thereof of the issue in dispute by filing notice of said appeal in writing with the hospital administrator together with all writings in connection herewith.

"Any aggrieved member involved in any dispute must appeal in writing in the following manner:
"(1) To the department involved.
"(2) To the credentials committee.
"(3) To the executive committee.
"(4) To the active staff at any regular meeting.
"(5) Discipline and disputes committee of the board of directors.
"(6) Final appeal to the board of directors at any of their regular meetings. At this level, the recommendations of all subordinate levels must accompany the appeal.

"*Sec. 2.* The appellant shall state concisely in writing at the time of appeal the issues involved and the reasons why appellant feels he had not been justly dealt with.

"*Sec. 3.* A copy of said notice of appeal and copies of all writings and documents not already in the possession of either the credentials committee or the executive committee shall be served on the secretaries of said committees at the same time that copies are served on the administrator."

"It is your prerogative to appeal this decision to the executive committee at any time.

Signed,

H. H. Kesten, D.O.

Chairman

Department of Surgery

Flint General Hospital

HHK: jc

cc: Dr. Polk

   Mr. Whitlow"

January 5, 1962, plaintiff sent defendant the following letter with copies to Polk and Whitlow: (*Exhibit P*)

"H. H. Kesten, D.O.          January 5, 1962

Dept. of Surgery

Flint General Hospital

Flint, Michigan

*Dear Dr. Kesten:*

"I hereby request in writing the specific list of charges which has led you to your decision that I require supervision within the department of surgery.

"In accordance with article 13 of the by-laws of the staff of Flint General Hospital, Inc., 1958, this matter is being brought to the attention of the credentials committee.

(signed) I.A. Schechet DO

cc: Mr. Whitlow

   Dr. Kesten

   Dr. Polk"

On the same date, plaintiff sent J. J. Bernhard the following letter with copies to Kesten and Whitlow: (*Exhibit O*)

"Dr. J. J. Bernhard          January 5, 1962

Chairman, Credentials Committee

Flint General Hospital

Flint, Michigan

*Dear Dr. Bernhard:*

"I hereby request a hearing before your committee as outlined in article 13 of the by-laws of the

staff of Flint General Hospital, Inc. 1958, concerning Dr. Kesten's decision that my work within the department of surgery be supervised.

"It is expected that a list of charges be submitted to me in writing, that I may be made aware of specific accusations, prior to the hearing before your committee.

"Enclosed please find a copy of a letter mailed to Dr. H. Kesten.

Sincerely yours,<br>I. A. SCHECHET

cc: Mr. Whitlow
    Dr. Bernhard
    Dr. Kesten"

January 9, 1962, defendant wrote Exhibit 2:

"January 9, 1962
To The *Credentials and Executive Committee:*

"After the review of the surgical department and members doing surgery during the year 1961, I have found it necessary to place Dr. I. A. Schechet under supervision of minor surgical procedures and all other cases that may become surgical in nature, for the following reasons:

"1. His constant contention that he requires no consultation;

"2. A record of four complaints to the executive committee for unprofessional conduct;

"3. One suspension of 30 days for unprofessional conduct;

"4. Gross mismanagement of surgical cases;

"5. Constant refusal to cooperate with the bed committee, especially involving one male patient who was molesting female patients;

"6. Forging my name on the above patient's discharge with the threat of legal suit;

"7. Unprofessional written notations on progress notes on surgical patients;

"8. Rude refusal to cooperate with Mrs. Parr in the disposal of a check from the endowment fund;

"9. Constant condemnation and unprofessional criticism of department heads to various staff members, P.O.M. members, and to lay people;

"10. Constant criticism of Flint General Hospital and the osteopathic profession, especially to lay people;

"11. Lack of communication with:

    A. Department heads

    B. Administration department

    C. Nurses

    D. Interns and residents, and other staff members.

"12. Constant threats of law suits every time he is displeased.

"13. He has consistently maintained that his holding a master's of science degree in nutrition makes him more qualified in medicine than anybody else.

"Although Dr. Schechet may be adept in certain minor procedures, his professional judgment is questionable and he should be carefully supervised in all procedures pertaining to the department of surgery.

"CONCLUSIONS: Dr. Schechet is so obsessed with insecurity, hate, fear and frustration that has so warped his judgment, that his activities have become dangerous to the staff, hospital and osteopathic profession. As a staff member, it is my opinion that his record and past activities are indicative of the fact that he falls in the category of causing harm to the corporation and should be permanently suspended from the staff.

        (Signed) .....................

             Chairman of

             Department of Surgery"

This was written in longhand by defendant, typed by his secretary and mailed to plaintiff, the credentials committee, the executive committee and Mr. Whitlow. Exhibit 2 is the basis of the alleged libel.

Plaintiff's contention that the question of absolute privilege was not before the trial court nor is it before this Court is untenable. While it is not

labeled absolute privilege, the facts pleaded in defendant's answer under special defense clearly raise the issue of absolute privilege. The fact that the pretrial summary indicates the defense is qualified privilege is not controlling when, as here, pleaded facts raise the issue of absolute privilege and that issue is not expressly waived by waiver recorded in the pretrial summary. GCR 1963, 301.3. *Conroy* v. *Harrison* (1962), 368 Mich 310, relied on by plaintiff is not controlling; it was decided under Court Rule No 35 (1945) which did not contain the controlling language of GCR 1963, 301.3. Defendant moved for directed verdict at the close of plaintiff's case on the basis of absolute privilege; this motion was renewed at the close of proof, and the same claim was reasserted in defendant's motion for judgment notwithstanding the verdict. The issue of absolute privilege is before this Court, and it was before the trial court.

It is apparent from exhibits P and O that plaintiff requested defendant to specify the charges against plaintiff which caused defendant to discipline plaintiff as indicated in exhibit 18 in order to permit plaintiff to follow the review process provided in the rules of the hospital. There is nothing in the record to indicate defendant sent exhibit 2 to plaintiff, the credentials committee, the executive committee and the administrator for any reason except in compliance with plaintiff's request of January 5, 1962 (*exhibit P*). *Shinglemeyer* v. *Wright* (1900), 124 Mich 230, is authority for holding exhibit 2 is subject to absolute privilege. The rule is succinctly stated in 3 Restatement of Law of Torts (Second), § 583, p 220, as follows:

"Except as stated in section 584 [584 has no application to the case in hand] the publication of false and defamatory matter of another is absolutely privileged if the other consents thereto."

See, also, Prosser on Torts (3d ed), p 804, and 1 Harper and James, The Law of Torts, § 5.17. Plaintiff's request for specification of the charges also authorized defendant to use his stenographer in the process of communicating them to plaintiff. *Beck* v. *Oden* (1941), 64 Ga App 407 (13 SE2d 468). It is the opinion of this Court that the alleged libel is subject to absolute privilege.

While this holding obviates discussion of the other issues raised by defendant, one of them deserves comment. Much is said in defendant's brief about the conduct and attitude of the trial judge toward defendant's counsel in the presence of the jury. The record does contain disparaging and belittling remarks by the court to defense counsel in the presence of the jury. Reference to canons 5 and 10 of judicial ethics should be sufficient to alert the trial bench to avoid such conduct.

The trial court is reversed. Judgment may enter in this Court for defendant notwithstanding the verdict, with costs to defendant.

LESINSKI, C. J., and T. G. KAVANAGH, J., concurred.