MERRITT v DETROIT MEMORIAL HOSPITAL

1. LIBEL AND SLANDER—QUALIFIED PRIVILEGE—PUBLIC INTEREST—
    PUBLICATION—DEFAMATORY UTTERANCES—DAMAGES—INTERESTS
    INVOLVED.

    Generally, a qualified privilege is recognized where the public
    interest in activities which presuppose frank communication on
    certain matters between persons standing in particular rela-
    tionships to each other outweighs the damage to individuals of
    good faith but defamatory utterances relevant to the interests
    of those involved.

2. LIBEL AND SLANDER—QUALIFIED PRIVILEGE—PUBLICATION—BONA
    FIDE COMMUNICATION—INTERESTS OF THE PARTIES.

    A qualified privilege extends to all communications made bona
    fide upon any subject matter in which the party communicating
    has an interest, or in reference to which he has a duty to a
    person having a corresponding interest or duty, and the privi-
    lege embraces cases where the duty is not a legal one, but
    where it is of a moral or social character of imperfect obliga-
    tion.

3. LIBEL AND SLANDER—PRIVILEGE—DEFINITION.

    The term privilege relates to a situation or occasion in which the
    importance of the criticism published justifies a modification or
    indeed a withdrawal of the protection normally afforded to our
    citizens' reputations.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 50 Am Jur 2d, Libel and Slander §§ 192, 195, 196.
[2] 50 Am Jur 2d, Libel and Slander §§ 273, 274.
[4, 5] 50 Am Jur 2d, Libel and Slander §§ 167, 275.
    Libel and slander: Privileged nature of communication to other
    employees or employees' union of reasons for plaintiff's discharge.
    60 ALR3d 1081.
[6] 50 Am Jur 2d, Libel and Slander §§ 149, 194.
[7] 4 Am Jur 2d, Appeal and Error § 76.
    Formal requirements of judgment or order as regards appealability.
    73 ALR2d 250.
[8] 50 Am Jur 2d, Libel and Slander §§ 193, 198.

4. LIBEL AND SLANDER—MASTER AND SERVANT—QUALIFIED PRIVILEGE —INTERESTS OF THE PARTIES—PUBLICATION.

An employer has a qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject of the publication.

5. LIBEL AND SLANDER—MASTER AND SERVANT—QUALIFIED PRIVILEGE —EMPLOYEE MISCONDUCT—SUPERVISORY PERSONNEL.

Employees responsible for hiring and firing are entitled to hear accusations of employee misconduct which warrant dismissal and preclude rehiring; therefore, employees who are supervisors, personnel department representatives or company officials are those employees to whom an employer-defendant's qualified privilege extends.

6. LIBEL AND SLANDER—CONSENT TO PUBLICATION—PRIVILEGE.

A communication regarding a person is absolutely privileged if the person consents to it.

7. APPEAL AND ERROR—CLEARLY ERRONEOUS RULE—COURT RULES.

A trial court's finding of fact will not be set aside unless it is clearly erroneous (GCR 1963, 517.1).

8. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS—GOOD FAITH COMMUNICATIONS—FALSE COMMUNICATIONS.

Absolutely privileged communications and qualifiedly privileged communications made in good faith do not lose their status even if the content of the communication is proved false.

Appeal from Wayne, William J. Giovan, J. Submitted October 12, 1977, at Detroit. (Docket No. 29655.) Decided February 7, 1978.

Complaint by Willie Merritt against Detroit Memorial Hospital for damages for libel and slander. Judgment for defendant. Plaintiff appeals. Affirmed.

*Rifkin, Schultz & Kingsley, P. C.,* for plaintiff.

*Dice, Sweeney, Sullivan & Feikens, P. C.* and *Clark, Klein, Winter, Parsons & Prewitt* (by *Fred W. Batten),* for defendant.

Before: D. E. HOLBROOK, P. J., and N. J. KAUF-
MAN and J. E. McDONALD,* JJ.

PER CURIAM. Plaintiff appeals from an adverse
judgment in her action for slander against her
former employer, Detroit Memorial Hospital, en-
tered by Wayne County Circuit Court Judge Wil-
liam J. Giovan.

From 1969, until June 1973, the plaintiff worked
as a ward clerk for defendant hospital. On April
18, 1973, she was injured in an automobile acci-
dent. Her family physician treated plaintiff for two
months, prescribing a muscle relaxant, pain killer,
and other drugs for her. Plaintiff returned to work
on June 18, 1973, when her supervisor, Mrs. J.
McMackin, told her to report for her annual physi-
cal examination. As part of that examination,
plaintiff furnished blood and urine samples.

On June 26, 1973, plaintiff attended a meeting
with Mona Gay Harmon, director of personnel at
defendant hospital, J. S. Blaine, executive director
of personnel, plaintiff's supervisor, Mrs. McMackin
and Mrs. A. Ross, representing the American Fed-
eration of State, County and Municipal Employees.
Blaine told plaintiff that there was a problem
regarding the urine sample and asked her to ob-
tain from her doctor a list of all medication he had
prescribed for her during the previous six months.

That same day plaintiff secured a list of her
medications from Dr. Long and hand-carried it to
the nursing office at the hospital. The list men-
tions eight drugs; at that time plaintiff was taking
two: Norflex, a skeletal-muscle relaxant and Phe-
naphen No. 4, which contains codeine. Dr. Long
testified that neither Norflex nor Phenaphen No. 4
contained morphine sulphate, a controlled sub-

* Circuit judge, sitting on the Court of Appeals by assignment.

stance, and that nothing he prescribed contained that substance.

Another meeting was held, attended by Blaine, Harmon, Ross and the plaintiff. Blaine told defendant that the urinalysis revealed morphine sulphate. Shortly afterward, plaintiff received a letter from Harmon terminating her employment as of June 28 for the stated reason that plaintiff had violated a work rule forbidding "[a]ny activities regarding personal use or abuse of drugs". Soon after, plaintiff filed this suit, charging defamation.

At trial, plaintiff testified to the above facts and related that after her dismissal, she applied to five hospitals and to an employment agency for work. As to Zieger Hospital, one of the five, plaintiff listed defendant hospital as her last employer and informed Zieger that she had been fired. However, plaintiff was less than certain on her testimony as to these events[1] and it is sufficient to note that at trial plaintiff complained that defendant told "prospective employers that she was fired for violating a work rule".[2]

Additionally, plaintiff testified that despite the fact nobody knew about the reason for her firing except her mother and her boyfriend, friends from work also knew the reason. Plaintiff encountered Larry, a union steward, who stated in the presence of others, "I heard they let you go for dope". She also testified that a Mr. Barnes, head of the union local, called her about the firing and knew the reason for it.

---

[1] For example, plaintiff denied furnishing her termination letters and related papers to Zieger when she applied there and denied asking defendant hospital for a reference but later admitted that she did ask the personnel office for a reference and did show the letter at Zieger.

[2] Although, on cross-examination, plaintiff admitted that only Zieger was informed of her employment at defendant hospital.

Some weeks after plaintiff's firing, her grievance was aired at a meeting attended by Blaine, Harmon, McMackin, a Mr. Pearson (an assistant administrator) and union representatives Barnes, Christine Jefferson, and Bonnie Davis. Blaine again said that plaintiff had been fired for drug abuse after morphine sulphate was found in her urine. Plaintiff signed a waiver form which stated: "I hereby authorize Detroit Memorial Hospital to release any and all Laboratory examinations and test results. I hereby waive legal privelege [sic] against release of this information to AFSCME Local #140." Plaintiff claimed that the second sentence was not on the form when she signed it, but eventually admitted that she knew the purpose of the form was to release the results of the drug screening test to the union in connection with her grievance. At trial, the test results were admitted, over objection, under the business records exception to the hearsay rule.

The director of personnel at defendant hospital also testified. She stated that she was the only person handling requests for references concerning employees terminated at defendant hospital. She testified that the personnel director at Zieger Hospital inquired about plaintiff. She told the director that plaintiff had been terminated for violating a work rule and was not "rehireable". Plaintiff's folder was marked: "All requests for reference *must* be directed *only* to: Personnel director— DMH".

After the close of all the evidence, the trial court made findings of fact and drew conclusions of law as follows:

(1) If defendant's statements were untrue and not privileged, they would be defamatory, charging plaintiff with commission of a crime.

(2) Although further evidence of the reliability of the drug screening test would have been desirable, the preponderance of the evidence shows that plaintiff did use morphine. The test furnishes the evidence of this. The only evidence to the contrary was plaintiff's denial, but because of plaintiff's several deliberately false statements of material facts, the court chose to give her testimony no weight.

(3) Even if the statement were untrue, defendant's communications to its employees, union officials, and other hospitals were clothed with a qualified privilege. Plaintiff herself published the reasons for her termination to Zieger Hospital; defendant could not have reasonably foreseen that she would do so.

On appeal, drawing from the trial court's first and third findings, plaintiff argues that the defendant did not have a qualified privilege to publish the reason for plaintiff's firing to supervisory personnel and to prospective employers. If a qualified privilege attached to those statements, the judgment for defendant hospital was correct. *Bacon v Michigan Central R Co,* 66 Mich 166; 33 NW 181(1887), *Harrison v Arrow Metal Products Corp,* 20 Mich App 590; 174 NW2d 875 (1969).

In general, a qualified privilege is recognized where the public interest in activities which presuppose frank communication on certain matters between persons standing in particular relationships to each other outweighs the damage to individuals of good faith but defamatory utterances relevant to the interests of those involved:

"The great underlying principle upon which the doctrine of privileged communications stands, is public policy. * * * Qualified privilege * * * extends to all communications made *bona fide* upon any subject-mat-

ter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation. [Citations omitted.]" *Bacon v Michigan Central R Co, supra* at 169–170.

"The term privilege relates to a situation or occasion in which the importance of the criticism published justifies a modification or indeed a withdrawal of the protection normally afforded to our citizens' reputations." *Harrison v Arrow Metal Products Corp, supra* at 609.

An employer has a qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject. *Cf. Carroll v Owen,* 178 Mich 551; 146 NW 168 (1914). Employees responsible for hiring and firing are entitled to hear accusations of employee misconduct which warrant dismissal and preclude rehiring. *Bacon v Michigan Central R Co, supra, Sias v General Motors Corp,* 372 Mich 542; 127 NW2d 357 (1964), *Poledna v Bendix Aviation Corp,* 360 Mich 129; 103 NW2d 789 (1960).

In the present case, the employees who attended the June 26, 1973, meetings included plaintiff's supervisor, the head of the hospital personnel office and his immediate subordinate. Thus, those employees were supervisors, personnel department representatives and company officials, see *Sias v General Motors Corp, supra* at 546–547, and as such, are those employees to whom defendant's qualified privilege extends. The trial court did not err as to this issue.

As to plaintiff's argument regarding publication to prospective employers, based on plaintiff's own admissions on cross-examination, the trial court found that plaintiff concealed her previous employ-

ment at defendant hospital from the employers to whom she subsequently applied except Zieger Hospital. Since there was no communication of any sort from anyone to these employers concerning plaintiff's employment with defendant, only Zieger need be considered.

The trial court found that plaintiff and no one else disclosed the reasons for her termination at defendant hospital to Zieger Hospital. A communication regarding a person is absolutely privileged if he consents to it. *Schultz v Guldenstein,* 144 Mich 636; 108 NW 96 (1906), *Shinglemeyer v Wright,* 124 Mich 230; 82 NW 887 (1900), *Bonkowski v Arlan's Department Store,* 12 Mich App 88; 162 NW2d 347 (1968), *Schechet v Kesten,* 3 Mich App 126; 141 NW2d 641 (1966). A trial court's finding of fact will "not be set aside unless clearly erroneous", GCR 1963, 517.1. As we do not so find, the trial court did not err as to this issue.

Plaintiff also argues that defendant did not have an absolute or a qualified privilege to publish defamatory statements about an employee to union representatives during grievance proceedings held pursuant to a collective bargaining agreement. However, the trial court found that the union representative was present at each of the June 26 meetings "more or less as the agent of the plaintiff". As plaintiff never objected, we cannot state that the finding was clearly erroneous. GCR 1963, 517.1. As such, plaintiff's actions amount to the equivalent of consent. We therefore hold that the communication was absolutely privileged. *Schultz, supra, Shinglemeyer, supra, Bonkowski, supra, Schechet, supra.* The trial court did not err as to this issue.

To summarize, the communications to the union representative and Zieger Hospital were absolutely

privileged and the communication to the supervisory personnel was qualifiedly privileged. Since all of the assailed communications were privileged, and since the trial court made a finding—undisputed on appeal—that all statements made by defendant hospital were made in good faith in reliance on the test results, it is not necessary to determine if the trial court erred in admitting the test results under the business records exception to the hearsay rule. Clearly, absolutely privileged communications and qualifiedly privileged communications made in good faith (as was the case here) do not lose their status if the content of the communication is indeed proved false. Thus, the admissibility (and impliedly the veracity) of the drug screening test is not a factor necessary to the disposition of the case.

Affirmed. Costs to appellees.