NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0139n.06

No. 19-1161

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| APRIL RYNIEWICZ, | ) | **FILED**<br>Mar 09, 2020<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CLARIVATE ANALYTICS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:     BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

BOGGS, Circuit Judge.  This is an appeal from a district-court order granting a motion to dismiss an action for breach of contract and defamation brought by April Ryniewicz ("Ryniewicz") against her former employer, Clarivate Analytics ("Clarivate").  For the reasons set forth below, we affirm the district court.

## I.     BACKGROUND

Ryniewicz was employed by Thomson Reuters for seven years until the sale of its IP & Science Division to Clarivate in 2016, when Ryniewicz became the Finance Director for IP Management of Clarivate's Master Data Center, Inc. ("Master Data Center").  In September 2017, Clarivate advised Ryniewicz that it was exploring the sale of the Master Data Center and offered Ryniewicz a Retention Agreement, which Ryniewicz signed the same month.  The Retention Agreement set forth incentives to encourage Ryniewicz's active participation in the change in control, including: (1) a Retention Bonus; (2) an Annual Incentive Plan award; and (3) Severance Pay.

In December 2017, Ryniewicz reviewed Master Data Center's balance sheet and submitted it to Clarivate's management. Thereafter, Clarivate's CFO discovered about $12 million in "unbilled revenue," which prompted an internal investigation by Clarivate's outside counsel, Latham & Watkins. At a meeting with the CFO and outside counsel on December 10, 2017, Ryniewicz, unaware of the internal investigation, was confronted with this large accounting discrepancy and accused of manipulating financial documents as well as embezzling $11.3 million. Ryniewicz denied any wrongdoing and at the end of a seven-hour-long meeting was placed on paid administrative leave. She denied wrongdoing also at two subsequent meetings on December 22, 2017 and January 5, 2018.

In mid-December 2017, the director of the private-equity firm that owns Clarivate informed Clarivate's sale agency that the sale of Master Data Center had been aborted due to Ryniewicz's suspected embezzlement. Over the following months, Clarivate made similar statements to potential buyers as it called the sale off. The sale of Master Data Center never occurred. Following completion of the internal investigation, Ryniewicz was terminated, without a cause being given, on January 26, 2018. She did not receive the payments contemplated by the Retention Agreement and in April 2018 she sued Clarivate for breach of contract and defamation. The district court granted Clarivate's motion to dismiss, and Ryniewicz timely appealed.

## II.    ANALYSIS

### A.    Standard of Review

We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 675–76 (6th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In reviewing the district court's order, we "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The court may affirm a decision of the district court for any reason supported by the record, including grounds not considered below. *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 330 F.3d 747, 750 (6th Cir. 2003).

**B.     Breach of the Retention Agreement**

Ryniewicz alleged that Clarivate breached the Retention Agreement by withholding payments due her under the Retention Agreement.

Although Ryniewicz did not attach the Retention Agreement to her Amended Complaint, her claim of breach of contract concerns the Agreement, which is referenced throughout that Complaint and is attached to Clarivate's Second Motion to Dismiss. "In evaluating a motion to dismiss, we 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'" *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Kreipke v. Wayne State Univ*., 807 F.3d 768, 774 (6th Cir. 2015)). It is therefore proper for us to refer not only to the Amended Complaint but also to the Retention Agreement itself when reviewing *de novo* the district court's order dismissing the breach of contract claim.

### 1.  Termination Without Cause

The Amended Complaint did not challenge the legality of Ryniewicz's termination without cause.  But since termination without cause was addressed in the district-court order dismissing the action, as part of the breach-of-contract claim on appeal, and in Ryniewicz's opposition to Clarivate's Second Motion to Dismiss, we consider it when relevant to the issue of the alleged withholding of payments under the Retention Agreement.

Ryniewicz submits that her termination without cause constituted a breach of the Retention Agreement by Clarivate and therefore relieved her of any obligation to perform conditions precedent to her payments under the Retention Agreement.

The Retention Agreement sets forth conditions under which Ryniewicz may be terminated. First, the Agreement specifies that "[t]hrough the date that you may begin employment with a purchaser of the Business, you will continue to be employed by a subsidiary of Clarivate Analytics under the terms of your offer letter . . . except as modified herein."  Ryniewicz did not bring claims under her original offer letter of hiring, only under the Retention Agreement.  Second, the Retention Agreement provides that "[t]he Clarivate Analytics subsidiary that employs you may in its sole discretion determine that your services are no longer required prior to the change in control."  By the terms of the Retention Agreement, Ryniewicz's employment was at will prior to the sale of Master Data Center.  Ryniewicz was terminated before any sale of the business occurred.

To make it even more clear that Ryniewicz could properly be terminated without cause, the Retention Agreement details the benefits and pay to which Ryniewicz would have been entitled if terminated "*other than for cause* during the Transition Period" (emphasis added), subject to

certain conditions precedent. It also specifies that if Ryniewicz was terminated for cause, she would receive no benefits or pay under the Agreement:

> If [Ryniewicz] fail[s] to honor any of the commitments set forth in this [Retention Agreement] or under any of [her] other agreements with and/or obligations to Clarivate Analytics, … in addition to the other remedies that may be available to Clarivate Analytics, [her] employment may be terminated for cause and [she] will forfeit all payments, benefits and the Retention Bonus under this [Retention Agreement] and will not be eligible for severance.

Finally, the Retention Agreement clarifies that Ryniewicz would not be entitled to the Retention Bonus "[i]n the event no change in control has occurred by September 13, 2018, but [her] employment with a subsidiary of Clarivate Analytics has been terminated, *for any reason*, prior to September 13, 2018" (emphasis added).

Ryniewicz submits that her termination without cause constituted a breach of the Retention Agreement on Clarivate's part and therefore excused her performance under the Agreement. However, the plain language of the Retention Agreement specifically supports the right of her employer to terminate her, be it with or without cause.

Pennsylvania law controls the Retention Agreement. As noted by the Supreme Court of Pennsylvania, "[a]n employee will be entitled to bring a cause of action for a termination of [an at-will employment] relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). Ryniewicz did not raise any such public-policy claims. Therefore, her performance under the Retention Agreement is not excused on account of an alleged breach of contract by Clarivate that terminated Ryniewicz without cause.

**2.** ***Payments under the Retention Agreement***

Ryniewicz claims that her termination without cause constituted a breach of the Retention Agreement by Clarivate and therefore relieved her of her performance of conditions precedent to

payments under the Retention Agreement. But because her termination without cause was already specifically contemplated by the Retention Agreement, such termination cannot now be claimed to constitute a breach of that Agreement. *See* Part III.B.1 *supra*. Ryniewicz's performance of conditions precedent to payments under the Retention Agreement—maintaining confidentiality of the potential sale as well as signing a separation agreement and a general release of claims against Clarivate—is therefore not excused. Furthermore, other conditions precedent to such payments were not satisfied either, as detailed below, and Ryniewicz would not have been entitled to payments under the Retention Agreement notwithstanding her performance.

Under the Retention Agreement, Ryniewicz could have been entitled to the following payments: (1) a Retention Bonus of $150,000; (2) an Annual Incentive Plan award; (3) Severance Pay equal to 26 weeks' pay; and (4) various health and outplacement benefits, for which Ryniewicz did not bring a claim. The Retention Agreement also sets forth several conditions to payments.

First, the Retention Agreement specifies that "except as otherwise provided in this letter, the payments, benefits, and Retention Bonus described in this letter will be subject to your continued employment through the end of the Transition Period." The "Transition Period" is defined as "the date of the change in control and 6 months thereafter." A "change in control" is further defined as "the completion of a sale or other disposition of all or substantially all of the operations of the Business …." The individual terms are further defined, but since the sale of Master Data Center never occurred, Ryniewicz was not employed through the end of the Transition Period. She was therefore not entitled to payments under the Retention Agreement unless otherwise specified therein.

Second, payments under the Retention Agreement were subject to Ryniewicz's "maintaining in strict confidence the contents of this [Retention Agreement], information related

to the potential sale of the Business and the change-in-control process (other than disclosures permitted by Clarivate Analytics)." Clarivate claims that Ryniewicz disclosed such confidential sale process information in her public court filings. Although disclosure of this information may well be deemed materially relevant to Ryniewicz's pursuit of claims of breach of contract and defamation, and the action was not filed until 2.5 months after Ryniewicz's termination without payments under the Retention Agreement, we do not need to address the issue of breach of confidentiality, since the failure of other conditions precedent is already fatal to Ryniewicz's breach-of-contract claim.

Third, the payment mechanics of the Retention Bonus and the Annual Incentive Plan award both hinged on the date of a change in control. Fifty percent of the $150,000 Retention Bonus was to be paid within thirty days of the closing of the transaction that resulted in a change in control of Master Data Center. The remaining fifty percent was to be paid within thirty days of the six-month anniversary of the closing. The Annual Incentive Plan award was to be prorated through the change-in-control date and stated that "[t]he timing of this payment will be dependent on the terms of the transaction." Thus, the plain language of the Retention Agreement makes it clear that both payments were contingent on the closing of the sale—which never occurred. Additionally, the Retention Agreement specifies that in case of termination "other than for cause during the Transition Period," the payments of the Retention Bonus and the Annual Incentive Plan award were to be made in accordance with the paragraphs describing payment mechanics—and again, those hinge on the closing date of the sale that never occurred.

Fourth, in case of termination "other than for cause during the Transition Period" and "provided that [Ryniewicz] ha[s] been in compliance with the conditions set forth in this letter," the payments of the Severance Pay, Retention Bonus, Annual Incentive Plan award and other

benefits are "subject to the requirements in paragraph 5 that [Ryniewicz] enters into and do[es] not revoke a separation agreement and general release." Ryniewicz does not allege that she signed a separation agreement or a general release of claims against Clarivate and its subsidiaries; in fact, Clarivate asserts that Ryniewicz never executed these required additional documents. So, this condition precedent was not satisfied either.

Fifth, Clarivate "reserve[d] the right to unilaterally amend or modify the terms of this [Retention Agreement] if it determine[d], in its sole discretion, that external changes or other non-recurring or unanticipated business conditions have materially affected the fairness of the terms or have unduly influenced the ability to meet them." Clarivate alternatively claims that it determined in its sole discretion the discovery of a $12 million accounting error to be an unanticipated business condition that materially affected the fairness of the terms of the agreement or its ability to meet them, thus allowing Clarivate to unilaterally modify the terms of the Retention Agreement and withhold payments to Ryniewicz thereunder.

Sixth, as set forth in Paragraph 6 of the Retention Agreement,"[i]n the event no change in control has occurred by September 13, 2018, but [Ryniewicz's] employment with a subsidiary of Clarivate Analytics has been terminated, for any reason, prior to September 13, 2018, [Ryniewicz] will not be entitled to receive the Retention Bonus or any portion of the Retention Bonus." Ryniewicz was terminated on January 26, 2017, hence well before September 13, 2018, and was therefore not entitled to any portion of the Retention Bonus. Not only was payment of the Retention Bonus conditioned on the sale of Master Data Center, but also it was conditioned on the sale by a date certain. However, had Ryniewicz remained employed as of September 13, 2018, in spite of no closing having occurred, she would still have been entitled to fifty percent of the

Retention Bonus within thirty days of September 13, 2018.[1]  But there was one caveat: the sale still had to be under contemplation at that time.  The last clause of Paragraph 6 of the Retention Agreement deals a fatal blow to Ryniewicz's claims for payment thereunder: "Other than the obligations set forth in this paragraph, in the event that Clarivate Analytics terminates its process to sell all or substantially all of the Business, this [Retention Agreement] will be null and void . . . . "  If Clarivate decided to continue the process later, it may, "in [its] sole discretion," replace the current Retention Agreement "by a new arrangement to be determined at such time."  To support her defamation claim, Ryniewicz quotes several statements that the sale of Master Data Center was "called off" as early as mid-December 2017 by the parent company of Clarivate.  Accepting Ryniewicz's allegations as to defamation as true, it therefore follows that the Retention Agreement is null and void, except for Paragraph 6, which allows survival of only the partial Retention Bonus payment provision in the amount of fifty percent, *provided that* Ryniewicz was still employed on September 13, 2018.  But by her own admission, Ryniewicz was terminated on January 26, 2018.  The Retention Agreement is therefore null and void in any event and Ryniewicz is not entitled to any payments under it.

Thus, regardless of other considerations, Ryniewicz failed to allege satisfaction of the conditions precedent for payments contained in the Retention Agreement, including the sale of Master Data Center, continued and uninterrupted efforts of Clarivate to sell Master Data Center, and her own maintenance of confidentiality as well as execution of the separation agreement and of a general release.  She also failed to show how a breach of contract by Clarivate arose out of the termination of her employment without cause, thus allegedly excusing her performance of

---

[1] Paragraph 6 of the Retention Agreement states in relevant part: "In the event no change in control has occurred by September 13, 2018, but you continue to be employed by a subsidiary of Clarivate Analytics as of this date you will be entitled to receive half or fifty percent (50%) of the Retention Bonus less applicable deductions and withholdings."

conditions precedent for payments.  Consequently, Ryniewicz failed to state a plausible claim for breach of contract.

## C.    Defamation

Because we are sitting in diversity, we apply the law of the forum state.  *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).  Michigan law governs the defamation claim, and we apply the state's law "as announced by its highest court."  *Bank of New York v. Janowick*, 470 F.3d 264, 272 (6th Cir. 2006).

Under Michigan law, the elements of a defamation claim are:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010) (citing *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005)).  Michigan law is not settled as to whether the imputation of embezzlement constitutes defamation per se.  *See generally Lakin v. Rund*, 896 N.W.2d 76, 78–85 (Mich. Ct. App. 2016) (per curiam) (discussing whether embezzlement was a crime of moral turpitude under *Taylor v. Kneeland*, 1 Doug. 67, 72 (Mich. 1843) and subsequent caselaw for the purposes of defamation per se).  We do not need to reach this question because Ryniewicz's allegations of defamation fail to satisfy other elements of the claim.

In Michigan, a "plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory."  *Ghanam v. Does*, 845 N.W.2d 128, 142 (Mich. Ct. App. 2014) (citation omitted).  The elements of the defamation claim "must be specifically pleaded, including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the

publication of the alleged defamatory words." *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 299 (Mich. Ct. App. 1991) (per curiam) (citing *Ledl v. Quik Pik Food Stores, Inc.*, 349 N.W.2d 529, 532 (Mich. Ct. App. 1984)). "[A] defamation plaintiff must plead with specificity who published the defamatory statement, when it was published, and, most importantly, a plaintiff must identify the precise materially false statement published." *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 220 (Mich. 1992) (Riley, J., concurring) (citing *MacGriff v. Van Antwerp*, 41 N.W.2d 524, 526 (Mich. 1950)).

Ryniewicz alleges that certain statements made by representatives of Clarivate's parent company and sales agency as well as Clarivate's management to potential buyers in the context of Clarivate's internal investigation regarding the $12 million in unbilled revenue are defamatory. Ryniewicz relies on this and substantially similar statements: "the sale of the business was off because of suspected embezzlement of $11.3 million by Plaintiff." But Ryniewicz does not allege that these statements are false; to the contrary, her pleadings show that she was, in fact, under investigation for suspected embezzlement of $11.3 million. "Under Michigan law, the court decides as a matter of law whether a particular statement is defamatory." *Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (citing *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767 (Mich. 1987)). "If the gist, the sting, of the [published statement] is substantially true, the defendant is not liable." *Ibid.* (quoting *Fisher*, 404 N.W.2d at 767–68). Since Ryniewicz did not allege these statements to be materially false, they cannot be used to support her defamation claim.

Furthermore, such statements made to potential buyers and other interested parties in the context of a contemplated sale are protected by qualified privilege. *Bufalino v. Maxon Bros.*, 117 N.W.2d 150, 156–57 (Mich. 1962). The elements of qualified privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to this purpose; (4) a proper occasion;

and (5) publication in a proper manner and to proper parties only. *Bufalino*, 117 N.W.2d at 153. Qualified privilege protects the speaker from the defamation claim if "the speaker had an interest or duty to communicate otherwise defamatory statements to those having a corresponding interest or duty, whether of a legal, moral or social character." *Dadd v. Mount Hope Church*, 780 N.W.2d 763, 767 (Mich. 2010) (order) (Markman, J., concurring in part and dissenting in part). This court has applied the qualified privilege standard in *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 217 (6th Cir. 1994) (holding that "[q]ualified privilege ... extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty" (quoting *Merritt v. Detroit Memorial Hosp.*, 265 N.W.2d 124, 127 (Mich. 1978))). *See also Rondigo, L.L.C. v. Twp. of Richmond*, 522 F. App'x 283, 287 (6th Cir. 2013) (citing *Dadd*, 780 N.W.2d at 766–67). For example, "[a]n employer has the qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject matter." *Tumbarella v. The Kroger Co.*, 271 N.W.2d 284, 289 (Mich. Ct. App. 1978); *see also Patillo v. Equitable Life Assurance Soc'y of U.S.*, 502 N.W.2d 696, 699 (Mich. Ct. App. 1992).

"Where qualified privilege exists, plaintiff, in order to recover, must affirmatively prove actual malice on the part of the defendant." *Peisner v. Detroit Free Press, Inc.*, 266 N.W.2d 693, 698 (Mich. Ct. App. 1978) (per curiam) (citations omitted). A plaintiff shows that the statement was uttered with actual malice by demonstrating that the publisher had knowledge of its falsity or acted in reckless disregard of the truth. *Peterfish v. Frantz*, 424 N.W.2d 25, 30 (Mich. Ct. App. 1988). Ryniewicz did not provide any support for her conclusory statement that Clarivate made defamatory remarks about her "with the knowledge of the falsity of the statements or in reckless disregard of their truth or falsity." "[A] court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. We therefore need not consider Ryniewicz's conclusory statements aimed at overcoming qualified privilege.

Other allegedly defamatory statements were made by Clarivate's outside counsel, Tara Reynolds of Latham & Watkins, in the process of an internal investigation into the suspected embezzlement of $11.3 million by Ryniewicz. Such communications included informing various employees that Ryniewicz was being investigated for embezzlement and questioning them about Ryniewicz's integrity. Again, Ryniewicz failed to allege that these statements are materially false. *See Fisher*, 404 N.W.2d at 767–68. Furthermore, statements made by counsel as part of an internal investigation are protected by qualified privilege. Outside counsel conducting an internal investigation has an interest or duty to make statements to Clarivate's employees with the purpose of facilitating the investigation. Similarly, Clarivate's corporate counsel has a duty to communicate with outside counsel and management regarding the investigation. Ryniewicz does not provide anything to overcome qualified privilege other than conclusory statements repeating the elements of malice. But "[a] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

General allegations that Ryniewicz was "falsely accused of embezzlement" by Clarivate's CFO and outside counsel during its internal investigation also fail for lack of specificity, aside from such statements being protected by qualified privilege. *See Ghanam*, 845 N.W.2d at 142 and *Rouch,* 487 N.W.2d at 220.

Ryniewicz further tries to ascribe to Clarivate liability for allegedly defamatory statements made by third parties, such as prospective buyers of Master Data Center as well as employees or

officers of Clarivate's sales agency. She does not name such parties as defendants and does not provide a theory under which liability for their alleged defamatory statements may be ascribed to Clarivate.

As for statements by employees of Clarivate such as Renee Darragh and Kimberly Burow that Ryniewicz "was terminated for embezzling $11.3 million from the company," Ryniewicz does not allege fault amounting at least to negligence on the part of such employees to satisfy the requirements of a defamation claim. *See Mitan,* 706 N.W.2d at 421. If anything, her termination following internal investigation into potential embezzlement could reasonably allow other employees to draw conclusions that embezzlement was, in fact, the cause of her termination. More importantly, Ryniewicz does not allege that Darragh and Burow were in a supervisory position or involved in the internal investigation for the purposes of ascribing their allegedly defamatory statements to Clarivate. She also does not allege that they repeated statements heard from her supervisors. *See Patillo*, 502 N.W.2d at 699. In *Patillo*, fellow employees who "were not supervisors, personnel department representatives, or other company officials" "may have had an interest in the corporation's standard of conduct and grounds for termination, but they did not have a duty that would interest them in knowing the reason for plaintiff's termination" and therefore statements made to them by a supervisor concerning the reasons for plaintiff's termination were not covered by qualified privilege. *Ibid.* Here, no allegations indicate that Darragh and Burow heard from Ryniewicz's supervisors that she "was terminated for embezzling $11.3 million from the company." Additionally, the statements by Darragh and Burow are not alleged to have been made "while in the discharge of [their] duties as … agent[s] for [Clarivate], or that [they were made] in relation to a matter about which [their] duties as [Clarivate's] agent[s] required [them] to act," so as to allow Ryniewicz to ascribe such defamatory statements to Clarivate. *Linebaugh v.*

*Sheraton Mich. Corp.*, 497 N.W.2d 585, 588 (Mich. Ct. App. 1993). "An employer is [vicariously] liable only for the acts of its employee committed within the scope of employment." *Id.* at 589.

Ryniewicz did not name Darragh and Burow as defendants and does not provide a basis for ascribing liability for their allegedly defamatory statements to Clarivate. Such statements by Darragh and Burow also fail as a basis for a defamation claim because Ryniewicz does not allege their fault amounting at least to negligence.

Statements made by Ryniewicz's supervisor, Venu Venugopal, to other employees could potentially form a basis for Clarivate's vicarious liability if they were made in the discharge of her supervisor's duties as an agent of Clarivate or in the scope of his employment, *see Linebaugh*, 497 N.W.2d at 588—which, however, is not alleged—and then as not covered by qualified privilege, *see Patillo*, 502 N.W.2d at 699—which, again, is not alleged. But even the supervisor's statements that are alleged lack the required specificity to form the basis of a defamation claim. In Ryniewicz's account, those statements appear to be gratuitous office gossip traveling through the grapevine, with statements speculating about her cause of termination as variously "having sexually inappropriate conversations with [Ryniewicz's] former supervisor" and "something did not add up with the books." Ryniewicz failed to identify specific allegedly defamatory language and the dates on which such statements were made, other than by month (February 2018). Moreover, even if Ryniewicz referred to such statements intending to show that they implied her questionable moral character or integrity, as suggested in her appellate brief, she still failed to allege the falsity of those statements in her Amended Complaint: "[a] cause of action for defamation by implication exists in Michigan, but can succeed only if the plaintiff proves that the defamatory implications are materially false." *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 609 N.W.2d 607, 611 (Mich. Ct. App. 2000) (citing *Hawkins v. Mercy Health Servs., Inc.*,

583 N.W.2d 725, 732 (Mich. Ct. App. 1998)). Even though "[w]ords imputing a lack of chastity to any female or male" constitute defamation per se under Mich. Comp. Laws Ann. § 600.2911(1) (West 1989) and in Michigan "established case law suggests that lack of chastity may be imputed by reference to acts other than promiscuous sexual intercourse," *Linebaugh*, 497 N.W.2d at 587, Ryniewicz still failed to allege the falsity of those statements to satisfy the elements of a defamation claim.

The defamation claim in the Amended Complaint variously suffers from lack of specificity in general, concerns statements made by third parties or protected by qualified privilege, and fails to show fault amounting at least to negligence on the speaker's part. *See Mitan*, 706 N.W.2d at 421. Ryniewicz has not shown that she satisfied the elements of a defamation claim under Michigan law, and at the same time she failed to state a claim for relief under the federal standards of facial plausibility. *See Iqbal*, 556 U.S. at 679. Under federal law, the complaint must allege sufficiently detailed facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Ryniewicz did not seek leave to amend her First Amended Complaint to cure the deficiencies of her defamation claims in response to Clarivate's Second Motion to Dismiss, and instead now tries to remedy them in her appellate brief. But such amended claims raised only on appeal are not before us. *See Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987) ("It is a well-established principle of appellate review that appellate courts do not address claims not properly presented below.").

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district-court order granting Clarivate's motion to dismiss Ryniewicz's breach-of-contract and defamation claims.