917 F.2d 24
 135 L.R.R.M. (BNA) 3056
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tony L. MILLER, Plaintiff-Appellant,
v.
NORFOLK & WESTERN RAILWAY CO., Defendant-Appellee.
 No. 89-4101.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Tony L. Miller, appeals from a decision of the district court issued upon remand from a previous appeal to this court.[1] After conducting an evidentiary hearing, the district court determined that the plaintiff's suit for defamation against defendant, Norfolk & Western Railway Company (N & W), was preempted by the Railway Labor Act (RLA), 45 U.S.C. Sec. 151 et seq. The plaintiff raises the following allegations of error on appeal: (1) his defamation claim was set forth in a "well-pleaded" complaint, and this state tort action should not be set aside; (2) the resolution of his defamation claim does not require the interpretation of the collective bargaining agreement (CBA); and (3) the district court erred in finding that the allegedly defamatory statements were made at the hearing before the public law board. Finding that the plaintiff's defamation claim is preempted by the RLA, we affirm the dismissal of the case.
 
 I.
 
 2
 This case arose out of a dispute between Miller and N & W following his removal as a foreman on August 3, 1982, for unsatisfactory service.[2] As a foreman, Miller was not covered by a collective bargaining agreement. However, after he lost his job as a foreman, he sought to assert his seniority bumping rights as an electrician under the CBA. He wrote a letter to the company, dated August 9, invoking Rule 18 of the CBA. Rule 18 reads:
 
 
 3
 Mechanics in service will be considered for promotion to positions of foremen. Employees promoted to official positions will retain their seniority in their occupations at last point employed.
 
 
 4
 Instead of reinstating Miller as an electrician, N & W conducted a formal investigative hearing on August 17 to determine Miller's role in an alleged scheme to defraud and steal from the company. After this hearing, at which N & W presented testimonial and other evidence that the plaintiff was involved in the scheme, N & W discharged Miller.
 
 
 5
 In accordance with the terms of the CBA, Miller, through the International Brotherhood of Electrical Workers, pursued grievance procedures to obtain reinstatement and compensation. These procedures proved unsuccessful. Miller then brought proceedings before a public law board[3] established in accordance with the RLA. The board found that Miller indeed had defrauded the company, and that his termination by N & W was proper under the CBA.
 
 
 6
 In 1983, Miller filed suit against the defendant in Ohio state court. He charged N & W with libel and slander, and he alleged that the statements that the defendant's officers and supervisory personnel made to the effect that plaintiff had been involved in the theft and fraud scheme were not true. He sought lost earnings, compensatory, and punitive damages. N & W removed the case to federal district court on the basis of the complaint's reference to 49 U.S.C. Sec. 11347, and on the basis of an allegedly mandatory but omitted reference to 45 U.S.C. Sec. 153.[4] According to the defendant, the district court had jurisdiction under 28 U.S.C. Sec. 1336[5] and 28 U.S.C. Sec. 1331.[6]
 
 
 7
 Miller filed a petition for remand, arguing that his suit was a common law tort action for money damages only, and that no federal relief was requested. The defendant argued in opposition that the plaintiff had voluntarily invoked 45 U.S.C. Sec. 153 when he filed grievance proceedings before the public law board seeking reinstatement. The district court denied the plaintiff's motion for remand, holding that Miller had in fact availed himself of the public law board forum, and that his claims in the present action were " 'predicated on a matrix of facts inextricably intertwined with the employment relationship and the procedures embodied in 45 U.S.C. Sec. 153.' " Miller, 834 F.2d at 559 (quoting the opinion of the district court). The district court also denied a motion for reconsideration filed by the plaintiff. The district court held that the public law board's previous determination that Miller had been dishonest and that he had not been wrongfully discharged was dispositive of his defamation claim. The court also held that the defamation claim was subject to the preemptive effect of the RLA, and that the board's previous rejection of the wrongful discharge claim would provide a basis for collateral estoppel for dismissal of the defamation claim on the merits.
 
 
 8
 On appeal, this court held that the type of preemption involved in this case was choice-of-forum preemption, citing San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). According to this doctrine, the proper question for determination is whether the plaintiff's claim can be brought in state court, or whether it is preempted by the RLA. If preempted by the RLA, then the proper forum would be the NRAB or public law board, and not federal district court.
 
 
 9
 The panel was unable to resolve this question based upon the record before the court because it was unclear when and in what context the alleged defamatory statements were made. The Sixth Circuit remanded the case to the district court for a determination of the proper forum. We ordered the district court to determine whether the alleged defamatory statements relied upon in the plaintiff's complaint were inextricably intertwined with the CBA.
 
 
 10
 On remand, the district court conducted an evidentiary hearing to determine when and in what context the alleged defamatory statements were made. The evidence presented included a copy of the collective bargaining agreement; the transcript of the August 17 hearing before N & W; copies of correspondence between the plaintiff, his union, and the defendant; and the decision of the public law board. Although plaintiff's counsel insisted at oral argument that defamatory statements were made in July and early August 1982, he presented no evidence to support these allegations. All of the evidence presented indicated that the statements were made at the August 17 hearing or in investigations leading up to both this hearing and Miller's ultimate discharge. All of this evidence was contained in the record submitted to the public law board for its determination of the plaintiff's wrongful discharge claim.
 
 
 11
 After reviewing the evidence presented, the district court reached the following conclusions:
 
 
 12
 Upon review of the record, the Court finds that plaintiff's claims are inextricably intertwined with the Collective Bargaining Agreement since: (1) according to the terms of the Collective Bargaining Agreement, plaintiff has seniority bumping rights as a non-supervisory employee; (2) the transcript of the investigation hearing indicates that plaintiff asserted his rights under the Collective Bargaining Agreement for reinstatement as an electrician before the public law board pursuant to the Railway Labor Act, 45 U.S.C. Sec. 151 et seq.; (3) the public law board determined that plaintiff had defrauded the defendant and that his termination from the company was proper under the Collective Bargaining Agreement; and (4) the allegedly defamatory statements for which plaintiff seeks relief were made at the hearing before the public law board. The claims at issue cannot be resolved without interpretation of the Collective Bargaining Agreement and require resolution pursuant to the administrative process set forth in the Railway Labor Act. Based on these findings, and in accordance with the Court of Appeal's [sic] opinion, the proper forum for this action is the Public Law Board. Accordingly, this action is terminated and these matters should properly be raised before the Public Law Board.
 
 
 13
 Miller v. Norfolk & Western Ry., 727 F.Supp. 365, 366-67 (N.D.Ohio 1989). This appeal followed.
 
 II.
 
 14
 Although the plaintiff has split his argument into three separate allegations of error, we will dispose of this case by examining the district court's factual and legal conclusions to determine whether the plaintiff's defamation claim is indeed preempted by the RLA.
 
 
 15
 The defendant argues that the district court's determination that the alleged defamatory statements were inextricably intertwined with the CBA was a finding of fact, and therefore reviewable under the clearly erroneous standard. We disagree. Although the determination of when and in what context the alleged defamatory statements were made is a factual finding, the determination whether these statements were inextricably intertwined with the CBA is a question of law. As such, it is reviewed de novo. See Taylor v. Gaskin, Inc. v. Chris-Craft Indus., 732 F.2d 1273, 1277 (6th Cir.1984).
 
 
 16
 After a review of the record, we conclude that the district judge was not clearly erroneous in finding that all of the alleged defamatory statements were made in the course of the investigation conducted pursuant to the terms of the CBA. Although plaintiff's counsel made statements to the effect that the defendant's officers made defamatory statements before this investigation began, he presented no evidence to support his assertions. Moreover, the plaintiff's complaint states that all of the defamatory statements were made "[i]n the middle and latter part of August, 1982, and thereafter...." (App. 6). We decline to disturb the district court's factual findings on this issue.
 
 
 17
 The ultimate issue in this case is whether the alleged defamatory statements were inextricably intertwined with the CBA. The RLA gives the National Railroad Adjustment Board (NRAB) exclusive jurisdiction over minor disputes that arise out of collective bargaining agreements. Beard v. Carrollton R.R., 893 F.2d 117, 121 (6th Cir.1989). "The final and exclusive jurisdiction of the Board has a broad sweep; no grievance that may fairly be said to stem from the collective bargaining agreement is excluded." Id. at 122. A dispute is classified as minor if it is one that grows out of grievances or out of the interpretation of agreements concerning rates of pay, rules, or working conditions. Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 563 (1987). Often, plaintiffs attempt to evade the exclusive jurisdiction of the NRAB by characterizing their claims as state causes of action. The test for determining whether these causes of action are preempted was set forth by this court in Stephens v. Norfolk & Western Railway Company, 792 F.2d 576, 580 (6th Cir.1986) (quoting Magnuson v. Burlington Northern, Inc., 576 F.2d 1367, 1369 (9th Cir.), cert. denied, 439 U.S. 930 (1978)):
 
 
 18
 If the "action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.," exclusive jurisdiction of the NRAB preempts the action.
 
 
 19
 Other courts have held that claims brought under state law for libel and slander are preempted by the RLA. In Edelman v. Western Airlines, Inc., 892 F.2d 839 (9th Cir.1989), Edelman, a flight attendant, was charged with the theft of liquor cart proceeds. After an investigation, Western Airlines discharged Edelman. Her union filed a grievance pursuant to the CBA, and a hearing was conducted. The employer upheld the decision to discharge and denied Edelman's grievance. She then pursued an appeal to the System Board of Adjustment, which also upheld the decision to discharge.
 
 
 20
 Edelman then filed an action in state court, raising claims for breach of express and implied contracts, wrongful infliction of emotional distress and unfair competition, and defamation resulting from the charges of theft on which the termination was based. The Ninth Circuit found all of Edelman's state law claims to be preempted. Regarding her defamation claim, the court concluded that the determination of the validity of the claim would "require a court to analyze the Agreement to decide whether Edelman's discharge was justified." Id. at 844. Therefore, the court concluded, it was inextricably intertwined with the CBA.
 
 
 21
 Similarly, the plaintiff's defamation claim was held to be preempted by the RLA in Majors v. USAir, Inc., 525 F.Supp. 853 (D.Md.1981). As in Edelman, the defamation claim concerned statements that were made by the employer in the course of an investigation under the CBA. The court provided the following reasoning for its conclusion that the defamation claim was preempted:
 
 
 22
 [M]ajors is complaining about allegedly tortious conduct committed in the course of a company investigation. So long as his claim is founded on some incident of the employment relation, it is immaterial, for purposes of coverage by the Railway Labor Act, whether the claim is expressly covered by the collective bargaining agreement, or is independent of that agreement. Investigations of suspected thefts of company property is a normal incident of any employment relationship. This is especially so where, as here, theft is a grounds for discharge under the collective bargaining agreement. Therefore, although that agreement does not speak to the procedures that govern such investigations, the dispute at issue bears a not insubstantial relationship to the labor contract, and this Court's jurisdiction is preempted....
 
 
 23
 Majors, 525 F.Supp. at 857 (citations and footnote omitted).
 
 
 24
 The same reasoning applies in this case. All of the alleged defamatory statements in this case were accusations of the plaintiff's involvement in an alleged scheme to defraud and to steal from N & W. The statements were made in the course of the investigation and hearings that were conducted under the terms of the CBA. These proceedings were initiated when Miller sought to invoke his seniority bumping rights under the CBA as an electrician. The investigations and hearings that ensued were conducted under the terms of the CBA, and it was during the course of these proceedings that the alleged defamatory statements were made. Although defamation was not an issue before the board, whether the plaintiff stole from the company was an issue. Therefore, the plaintiff's defamation claim is based upon a matrix of facts that is inextricably intertwined with the collective bargaining agreement.
 
 
 25
 The exclusive jurisdiction of the NRAB over minor disputes was created "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. Sec. 151a. If we were to permit a claim like the plaintiff's to evade the jurisdiction of the board, "the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted." Magnuson, 576 F.2d at 1369. Claims that relate to matters covered in or by grievance proceedings must be preempted by the RLA, or else they will have a chilling effect on these proceedings. The inquiry, therefore, must focus on the claim's relation to the proceedings under the CBA as a whole, and not on whether specific issues would be addressed in both the state law claim and the grievance proceedings.
 
 
 26
 Because the plaintiff's defamation claim in this case is inextricably intertwined with the collective bargaining agreement, the district court's dismissal of this case with instructions that the plaintiff pursue the matter before the public law board was proper.
 
 
 27
 AFFIRMED.
 
 
 28
 ENGEL, Senior Circuit Judge, concurring.
 
 
 29
 At the time plaintiff Miller was discharged from his employment, or suspended, he was a supervisory employee of Norfolk & Western Railway Company. While the proof of his claim that he was defamed comes from statements elicited in the course of an investigation conducted pursuant to the collective bargaining agreement (CBA) between the union and the railway, Miller claims that defamatory statements forming the basis for his state defamation claim had to have preceded his discharge or suspension because it was precisely these statements which led to his loss of his job as a supervisor, a position not subject to the CBA. Given an opportunity to pursue normal discovery, he claims, he could have ascertained the statements of his accusers which preceded the investigation and led to his discharge or suspension as a supervisor.
 
 
 30
 If Miller was only a supervisor and not subject at all to the terms of the collective bargaining agreement, or if he was a member of management, no one could seriously claim that his common law action for defamation would be preempted as being inextricably intertwined with a CBA which did not in any way bind him. However, the circumstances here are most unusual in that Miller had previously been a member of the bargaining unit and had been promoted to supervision while still protected by the terms of the CBA. That agreement accorded him certain rights as a union member should his supervisory position for any reason be terminated. He therefore was not altogether free from the benefits or responsibilities of the CBA, as he would have us believe. In fact, upon being suspended he immediately repaired to that document, the CBA, in order to protect his rights to employment as a union member, including the rights to continue seniority and to bumping privileges. In sum, while Miller was a member of supervision, he also retained inchoate but very real rights as a union member under the CBA which came into play when he was suspended. The merits of his dispute, therefore, are inextricably intertwined with the rights which he invoked under the CBA. The facts of his dispute formed the matrix of the facts in dispute before the public law board.
 
 
 31
 Were it not for these most unusual circumstances, and were Miller only a supervisor who had never been a union member and was not in any way covered by the collective bargaining agreement, I would have been obliged to dissent from the majority and vote to reverse the determination of the district court. In the above hypothetical, Miller would probably have been entitled to bring his common law action against those whom he accused of defaming him on the well established principle that a plaintiff is the master of his own complaint. In such a case, Miller may not have fared any better, for he might very well have been plagued by defenses under state law relating to privileges or immunities arising out of his employer's investigation. Or, even more likely, Miller might have faced the collateral estoppel effects of the adverse decision rendered against him by the public law board which, after investigation, found that in fact he had committed those acts which he claimed were falsely imputed to him. These matters, however, would be the final decision of the state court or the district court, if its diversity jurisdiction was properly invoked.
 
 
 
 [1]
 The opinion of this court in the previous appeal is reported at 834 F.2d 556 (6th Cir.1987). The district court's opinion upon remand, Miller v. Norfolk & Western Railway Company, is reported at 727 F.Supp. 365 (N.D.Ohio 1989)
 
 
 [2]
 The plaintiff characterizes this "removal from service" as a discharge, whereas the defendant characterizes it as a suspension
 
 
 [3]
 A public law board is an arbitration board selected by the parties; it operates within the provisions of the RLA
 
 
 [4]
 45 U.S.C. Sec. 153 sets forth the composition, jurisdiction, and duties of the National Railroad Adjustment Board (NRAB)
 
 
 [5]
 28 U.S.C. Sec. 1336 confers jurisdiction upon federal courts to adjudicate certain matters involving the Interstate Commerce Commission
 
 
 [6]
 28 U.S.C. Sec. 1331 is the general federal question jurisdiction provision