Jerry **CRAWFORD** and Catherine Crawford

v.

**TRW, INC. et al.**

No. 92–CV–71910–DT.

United States District Court,
E.D. Michigan, S.D.

Feb. 26, 1993.

Scott M. McDonald, Detroit, MI, for plaintiff.

Ellen F. Moss, Southfield, MI, Joel Goodman, Berkley, MI, for defendant.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This matter is presently before the Court on the Plaintiffs' Motion to Remand this action to the Macomb County Circuit Court, and on Defendants' subsequent Motions for Summary Judgment. The principal issue presented in all of these Motions is whether Plaintiffs' defamation/intentional infliction of emotional distress action is preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* (the "LMRA").

The parties have fully briefed the pertinent issues in this matter and, therefore, as indicated to counsel at the scheduling/status conference conducted by the Court in this case, it will decide the instant Motions "on the briefs" pursuant to Local Rule 7.1(e)(2). This Opinion and Order sets forth the Court's ruling.

### II. FACTUAL BACKGROUND

Plaintiff Jerry Crawford is an hourly employee of Defendant TRW, Inc.[1] As an hourly employee, the terms and conditions of Mr. Crawford's employment with his employer are governed by a collective bargaining agreement entered into between TRW and UAW Local No. 247 (the "CBA"). During

---

1. TRW, Inc. was dismissed from this action with prejudice pursuant to the October 7, 1992 Stipulation of the parties.

the course of his employment at TRW's Sterling Heights Van Dyke plant, Mr. Crawford has held several union positions. He currently holds the union position of district committeeman, a position he was elected to hold until May of 1994.

The incidents giving rise to the instant defamation/intentional infliction of emotional distress action are as follows.

In December of 1990, TRW reduced its workforce at the Sterling Heights facility by laying off 36 employees. This lay-off caused another hourly employee, Defendant Daniel King, to be "bumped" from the third shift to the second shift in his same job classification. Although Mr. King had more seniority with TRW than Plaintiff Crawford, King was bumped instead of Crawford because, pursuant to the terms of the CBA, as a union official, Mr. Crawford was able to exercise "superseniority".[2]

King filed a grievance contesting the fact that he was bumped, charging in his grievance that TRW violated the union contract because it had "grant[ed] superseniority to a union official where it doesn't apply."[3] Then, a month after filing his grievance, in January 1991 King filed an unfair labor practice charge against TRW with the National Labor Relations Board (the "NLRB"), alleging that TRW violated the National Labor Relations Act by retaining Crawford on the third shift instead of him.

On February 19, 1991, officials from Local 247 and TRW met to discuss King's grievance. They agreed that the Company had correctly applied the CBA in retaining Crawford in a third shift position, and they settled King's grievance along those lines. Two weeks later, King, apparently disagreeing with his union's agreement with TRW's interpretation of the CBA and dissatisfied with the union's agreement not to pursue his grievance, amended his NLRB charge to assert, in addition to his charge against TRW, an unfair labor practice against his local union.

The NLRB issued a complaint against both TRW and UAW Local 247 in April 1991 and set a July 29, 1991 hearing on King's unfair labor practice charges. Just prior to the scheduled NLRB hearing date, the local union, TRW and King reached a settlement disposing of King's charges. Pursuant to the settlement, King was paid $611.12 by each TRW and his local union in exchange for his dismissal of his NLRB complaints and his agreement that neither TRW nor Local 247 would be required to acknowledge that their actions under the collective bargaining agreement were in violation of law.

As a result of the settlement, an official NLRB Notice was posted by Local No. 247, pursuant to NLRA regulations, 29 C.F.R. § 101.1 *et seq.*, on the union bulletin boards at TRW's Van Dyke plant. That Notice provided as follows:

### NOTICE TO EMPLOYEES AND MEMBERS

POSTED PURSUANT TO A SETTLEMENT AGREEMENT APPROVED BY A REGIONAL DIRECTOR OF THE NATIONAL LABOR RELATIONS BOARD AN AGENCY OF THE UNITED STATES GOVERNMENT

We represent the employees of TRW, Inc., hereafter the Employer in the following appropriate unit:

> All hourly production and maintenance employees at the Employer's Sterling Heights plant, excluding all supervisory employees, plant protection employees and office and confidential employees.

WE WILL NOT cause or attempt to cause the Employer to discriminate against employees who are not Union officials by improperly applying and enforcing the provision in our contract with the Employer which provides for special seniority rights of Union officials by allowing Union officials to exercise those rights for job preference.

---

**2.** "Superseniority" under the TRW–UAW CBA gives union officials extra seniority so that they can stay on a particular shift to process grievances for fellow union members.

**3.** Although there is no mention of Plaintiff Jerry Crawford by name, Plaintiff claims that by this statement in King's grievance, he was defamed. [Complaint, para. 8.]

WE WILL, jointly with the Employer, make whole employee Daniel King, for any loss of wages he may have suffered as a result of being bumped from his job by the exercise of special seniority rights for job preference by Union official Jerry Crawford.

> LOCAL UNION NO. 247, INTERNATIONAL UNION UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, (UAW) AFL–CIO–CLO
> (Labor Organization)

Dated: Aug. 9, 1991

By: _____/s/_____
    (Representative)    (Title)

### THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED

This notice must remain posted for 60 consecutive days from the date of posting and must not be altered, defaced or covered by any other material. Any questions concerning this notice or compliance with its provisions may be directed to the Board's Office.

[UAW's Brief, Ex. C.] [4]

Posted along side the NLRB Notice, were letters from the UAW and TRW explaining why the settlement occurred. The letter posted by Local 247 was a letter from the UAW International Union's Associate General Counsel to the President of Local 247, which stated in pertinent part:

Dear Dan:

You have asked me to explain why I recommended that the local settle the pending unfair labor practice case with Charging Party Dan King regarding his superseniority dispute.

First, we continue to take the position that there was no violation of the National Labor Relations Act here. Article 15.1 and 15.2 of the labor agreement provides that union officials can be bumped from their jobs as long as they are qualified to perform the lower paying job and are not removed from their representation group. Crawford has never been qualified on either the laborer's classification or the truck driver's classification. A union official is entitled to use superseniority to avoid him from [being displaced from] his election district or group. Crawford did nothing wrong in refusing to accept a lower-paying job which he was not capable of performing. Nothing in the law requires that a union official be reduced to a classification he is not capable or qualified to perform.

Second, the NLRB hearing, otherwise scheduled for July 29, would have been focused solely on the question of whether or not Crawford could perform these duties. The costs involved in conducting such a hearing ... would have been far greater than the approximate $600 the settlement is presently costing the Union.

\*    \*    \*    \*    \*    \*

Since the cost of proving that Crawford was not qualified to perform the laborer or truck driver job would have been far more than simply paying off King, we recommended saving the membership dues money.

[TRW Brief, Ex. G.] [5]

TRW's letter consisted of one sentence: "this letter will clarify our mutual agreement that Article 15.1 and 15.2 of the collective bargaining agreement are not intended to

---

4. Plaintiff claims that he was defamed by the posting of this Notice because it "falsely accused [Crawford] of abusing, misusing, or otherwise inappropriately exercising his capacity as a union official in order to allegedly cause Defendant Daniel King to lose seniority and suffer a temporary layoff." [Complaint para. 11.]

5. Plaintiff claims that the posting of this letter was defamatory because it "implied that Plaintiff Jerry Crawford was responsible for the loss of the superseniority of Defendant Daniel King and that the actions of Plaintiff Jerry Crawford were the cause of a monetary loss to UAW International and UAW Local No. 247, because the grievance filed by Defendant Daniel King had to be

provide classification superseniority to union officials."[6]

Five and a half months after the posting of the NLRB Notice and the UAW's and TRW's letters of explanation of the settlement of the King grievance, on January 30, 1992, Plaintiffs Jerry Crawford and his wife, Catherine Crawford, filed the instant lawsuit claiming that Jerry Crawford has been defamed by King's grievance and the posting of the NLRB Notice and the UAW's and TRW's letters of explanation as set forth in footnotes 3–6, *supra* (Count I). Catherine Crawford further claims that as a result of the foregoing, she has suffered a loss of consortium (Count II). Lastly, in Count III Plaintiffs allege that the defamatory actions of King, the UAW, UAW's Associate General Counsel, Betsy Engel, and his employer TRW amount to intentional infliction of emotional distress upon both Jerry Crawford and his wife, Catherine (Count III).

As indicated above, Mr. Crawford is complaining principally about two things in this lawsuit: The grievance filed by King on December 6, 1991—which does not mention Crawford by name—and that part of the NLRB Notice and the explanatory letters regarding settlement of King's unfair labor practice charges which Crawford interprets as implying that he was the "cause" of King's temporary layoff and the Union having to spend $611.12 of the membership's money.

Defendants timely removed Plaintiffs' action to this Court on the basis of complete preemption under Section 301 of the LMRA. Plaintiffs subsequently moved to remand.

### III. DISCUSSION

#### A. REMOVAL

Normally, a defendant may remove an action to federal court only if that court has "original jurisdiction" over the action. 28 U.S.C. § 1441(a). If a court lacks diversity jurisdiction over an action—as in the instant case—in order to remove the state court action to federal court, the defendant must establish that the action "arises under" the

Constitution or law of the United States. 28 U.S.C. § 1331.

To determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks to the plaintiff's complaint. *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville Railway Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). If the complaint relies only on state law, normally the district court will find that it lacks subject matter jurisdiction and the action is not removable. A defendant's claim of preemption would then be treated as a defense and addressed by the state court. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

However, the Supreme Court has developed an exception to the "well-pleaded complaint rule". If Congress intends that a federal statute completely preempt an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. The complaint may, thus, be removed to federal court and will be treated as alleging a federal cause of action. As explained by the Supreme Court in *Caterpillar, supra:*

> There does exist, however, an "independent corollary" to the well-pleaded complaint rule known as the "complete preemption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.,* 482 U.S. at 393, 107 S.Ct. at 2430 (citations and footnote omitted).

The Supreme Court has expressly and repeatedly held that the Labor Manage-

---

settled at a monetary loss to the UAW Defendants...." [Complaint, para. 15.]

**6.** Plaintiff claims, without explanation, that this one sentence "clarification" posted by TRW was defamatory. [Complaint, para. 16.]

ment Relations Act (the "LMRA")—which is the crux of the federal jurisdiction issue in this case—is one such statute which evinces a congressional intent to completely preempt those areas of state law relating to collective bargaining agreements.

As the Supreme Court explained in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), § 301 of the LMRA is an "extraordinary" federal statute which preempts all state law claims arising out of collective bargaining agreements:

> [T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violations of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that the state law would provide a cause of action in the absence of § 301.

463 U.S. at 23, 103 S.Ct. at 2853. *See also, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

When the Supreme Court was later called upon to decide when a state law tort claim is preempted, recognizing the impact of § 301, it held that when "evaluation of [a state law] claim is *inextricably intertwined with consideration of the terms of [a] labor contract,*" the state law claim is preempted. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). This is because

> [t]he interests in interpreting uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement must be resolved by reference to uniform federal law.... [A]ny other result would elevate form over substance and allow the parties to evade the requirements of § 301....

471 U.S. at 211, 105 S.Ct. at 1911. *See also, Electrical Workers v. Hechler*, 481 U.S. 851, 858–859, n. 3, 107 S.Ct. 2161, 2166, n. 3, 95 L.Ed.2d 791 (1987) (holding that section 301 preemption occurs when the plaintiff's claims are "substantially dependent on analysis of a collective-bargaining agreement.")

Three years later, in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court acknowledged the continued viability of *Allis–Chalmers v. Lueck* and *Electrical Workers v. Hechler*, and restated the rules set forth in those cases as presenting the question of whether the plaintiff's state law claim requires interpretation of the collective bargaining agreement. If the answer to that question is "yes", then under *Lingle, Allis–Chalmers,* and *Hechler* and their progeny, the state law claim is preempted under § 301 of the LMRA.

In order to determine whether Plaintiffs' claims in this case require interpretation of the collective bargaining agreement, the Court must first examine the elements which Plaintiffs must satisfy in order to make out a claim of defamation and intentional infliction of emotional distress claims under Michigan law. *See Barbe v. Great Atlantic & Pacific Tea Co., Inc.*, 722 F.Supp. 1257, 1260 (D.Md. 1989), *aff'd*, 940 F.2d 651 (4th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 109 (1992), in which the court explained the preemption analysis mandated by *Allis–Chalmers* and *Lingle*:

> Under a proper preemption analysis ... the first step is to recognize the essential elements of the state law tort claims, in this case defamation and intentional infliction of emotional distress, and against the elements so identified, determine whether the state law claim can be resolved without interpreting or depending on the proper interpretation of the collective-bargaining agreement.

722 F.Supp. at 1260.

In order to establish a *prima facie* claim of defamation under Michigan law, a plaintiff must prove *each* of the following elements:

(1) a false and defamatory statement concerning plaintiff;

(2) an unprivileged communication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; and

(4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod).

*Morganroth v. Whitall,* 161 Mich.App. 785, 789, 411 N.W.2d 859 (1987).

With respect to the second element—whether the communication of the allegedly false statement was unprivileged—Michigan recognizes a qualified "duty/interest" privilege where public policy pre-supposes that frank communication on certain matters between persons standing in particular relationships to each other outweighs the damage to individuals. *Merritt v. Detroit Memorial Hospital,* 81 Mich.App. 279, 284, 265 N.W.2d 124 (1978):

> Qualified privilege extends to all communications made in good faith *upon which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty.* And the privilege embraces cases where the duty is not a legal one, but were it is of a moral or social character or imperfect obligation.

*Merritt, supra,* at 81 Mich.App. 284–285, 265 N.W.2d 124, *quoting Bacon v. Michigan Central Railway Co.,* 66 Mich. 166, 169–170, 33 N.W. 181 (1887).

In this case, the Court finds that the issues relating to privilege—which is an essential element of Plaintiffs' defamation claim—require interpretation of the TRW–UAW collective bargaining agreement.

Here, with respect to that part of Plaintiffs' defamation claim predicated upon the allegedly false communications made by union and company management officials in the NLRA-mandated Notice of settlement of the King unfair labor practice charges and the two explanatory letters from management and the international union, the Court notes that these communications were made via posting on designated "union" bulletin boards. The CBA provides for the use of designated union bulletin boards for notifying union members about union business matters. [Sec. 29.1 of the CBA]. Further, the Agreement imposes upon the Union leadership (including, in particular, district committeemen who, pursuant to Sec. 29.1, have responsibility for the posting of information on union bulletin boards) and the Company a responsibility to inform Union members regarding matters involving interpretation of the CBA. [See Sec. 3.4 of the CBA.] As indicated above, the NLRB Notice and explanatory letters at issue here address matters involving interpretation of the CBA.

Thus, whether or not publication of the subject letters and required NLRB notice via posting on designated bulletin boards constituted a privileged communication under Michigan law will require interpretation and application of at least these CBA provisions.

Furthermore, as the court found in holding that the plaintiff's defamation claim was preempted under § 301 in an analogous situation in *Barbe v. Great Atlantic & Pacific Tea Co., Inc., supra,* 722 F.Supp. at 1262, were the Court to rule that the defamatory claim was independently resolvable without reference to the CBA, it would necessarily be concluding that the Defendants had no duty to notify the union membership of the decision taken regarding future interpretation and application of the seniority and superseniority provisions agreed upon by labor and management, and of the King grievance monetary settlement for which membership union dues were being expended. The union members certainly had an "interest" in these matters.

Thus, it is clear to the Court that in order to resolve the qualified "duty/interest" privilege issue to discern whether Plaintiffs have made out a defamation claim under Michigan law, the Court would necessarily have to determine the relative interests of TRW, the union and its members in the information communicated in the three disputed postings. To make that determination, the Court will have to construe the provisions of the CBA, as well as unwritten company and union practices—which courts have also found to be a part of a collective bargaining agreement. *See Smith v. Kerrville Bus Co., Inc.,* 709

F.2d 914, 917, 920 (5th Cir.1983); *Reid v. Michigan Bell Telephone Co.*, No. 87–30048 (E.D.Mich.1988).[7]

Similarly, with respect to Plaintiffs' claim that Defendant King's grievance was defamatory, the CBA contains provisions addressing claims of grievants and third parties—such as that of Mr. Crawford in this case—arising out of the union's and union officials' presentation, prosecution and settlement of grievances. [See CBA § 4.1.5.] Thus, the Court will be required to interpret at least that provision of the CBA. Furthermore, courts have repeated held that defamation claims predicated upon allegedly false statements made during the course of a grievance or arbitration procedure are preempted under Section 301. *See e.g., Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir.1989); *Kindness v. Spang*, 716 F.Supp. 1535 (M.D.Pa.1987) (because the allegedly defamatory statements occurred in the context of a grievance proceeding, the statements "are integrally involved with the rights and procedures provided under the collective bargaining agreement" and, therefore, court determined that removal of plaintiff's defamation claim under Section 301 of the LMRA was proper. *Id.* at 1538.) *See also, Miller v. Norfolk & Western Ry.*, 917 F.2d 24 (unpublished opinion, full text available on WESTLAW at 1990 WL 163302 and on LEXIS at 1990 U.S.App. LEXIS 19129) (6th Cir.1990), in which the court held that the plaintiff's defamation claim, which was predicated upon statements made during grievance arbitration proceedings, was preempted under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (the "RLA"), which is the LMRA's statutory counterpart applicable to railroad and airline employees. The *Miller* court explained that a state law defamation claim is preempted

[i]f the action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement....

1990 WL 163302, at *4, 1990 U.S.App. LEXIS 19129, at *10, *quoting, Stephens v. Norfolk & Western Ry. Co.*, 792 F.2d 576, 580 (6th Cir.1986).

■ With respect to Plaintiffs' claim of intentional infliction of emotional distress, to establish such a claim under Michigan law, Plaintiffs will have to show that the Defendants' conduct in posting the NLRB notice and two explanatory letters was "extreme and outrageous". *See Roberts v. Auto Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985). Whether Defendants' conduct was extreme and outrageous will depend on whether their actions contravened the TRW–UAW Agreement. If their conduct was in compliance with the written Agreement and unwritten company and union practices it will not be deemed to be "extreme and outrageous". *Douglas v. American Information Technologies Corp.*, 877 F.2d 565 (7th Cir. 1989) (plaintiff's claim of intentional infliction of emotional distress held preempted under § 301 because the court's determination of whether the defendant's allegedly wrongful conduct was "extreme and outrageous" would require interpretation of various written provisions of the collective bargaining agreement and unwritten company practices); *Newberry v. Pacific Racing Association*, 854 F.2d 1142 (9th Cir.1988) (plaintiff's emotional distress claim held preempted under Section 301 because the court would be required to analyze the terms of the labor agreement to determine whether or not the defendant's conduct was justified). *See also, Barbe v.*

---

**7.** Additionally, it also appears to the Court that Plaintiffs' claims with respect to the posted NLRB Notice were properly removed from the state court because they are preempted under the National Labor Relations Act, 29 U.S.C. § 152, *et seq.* (the "NLRA"). As indicated above, the posting of the Notice of settlement of the King unfair labor practice charges was mandated under the NLRA regulations. And, as the Supreme Court explained in *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), with respect to NLRA preemption:

[W]e reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme.

430 U.S. at 305, 97 S.Ct. at 1066.

To allow Plaintiff to proceed with a common law defamation action in state court based upon a posting mandated by the NLRA regulations would clearly constitute a "threat of interference with the federal regulatory scheme."

*Great Atlantic & Pacific Tea Co., supra,* 722 F.Supp. at 1262.

Thus, to determine whether Plaintiffs in this case have satisfied the "extreme and outrageous" requirement to make out a claim of intentional infliction of emotional distress, the Court will have to interpret the Agreement's provisions to determine whether Defendants' conduct was or was not in compliance therewith.

In sum, because the Court finds that resolution of Plaintiffs' claims of defamation and intentional infliction of emotional distress will require interpretation of, and will depend upon analysis of, numerous provisions of the CBA as well as unwritten company/union practices, the Court determines that Defendants' removal of this action to federal court on the basis of LMRA Section 301 preemption was proper.

### B. SUMMARY JUDGMENT

■ Because the Court finds that Plaintiffs' claims of defamation and intentional infliction of emotional distress are preempted under Section 301 of the LMRA, they must be considered as Section 301 claims and analyzed by application of federal common law. Recast as Section 301 claims, the Court finds that Plaintiffs' claims must be dismissed.

Before a plaintiff may maintain a § 301 action, he must attempt to exhaust any exclusive grievance and arbitration procedures established by the collective bargaining agreement. *Clayton v. International Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

Dismissal of Plaintiff Jerry Crawford's claims regarding the posting of the NLRB Notice and the explanatory letters in this case is mandated because pursuant to the grievance and arbitration procedures of the CBA, his union and TRW agreed that the grievance and arbitration mechanism would be the exclusive mechanism for resolving all disputes "which may arise out of the employment relationship ... which involve questions concerning the interpretation or application of [the] Agreement". [CBA § 4.1.] Mr. Crawford, thus, could have filed a grievance to contest the postings which he com-

plains of in the instant action because the postings are matters clearly "arising out of the employment relationship" and clearly involve questions "concerning interpretation and application of the Agreement", but he did not, and it is too late for him to do so now. The CBA provides that all grievances involving matters other than layoff or discharge must be presented "within one (1) month after the employee involved knew or reasonable [sic] should have known of the facts giving rise to the grievance." [CBA Sec. 4.5.] The postings which Crawford complains of occurred in early August 1991. He, therefore, would have had to have filed a grievance regarding those postings in September 1991.

Because Mr. Crawford failed to utilize and exhaust the extrajudicial grievance and arbitration dispute mechanism agreed upon by his union and his employer, and instead attempted to by-pass this process by initiating this judicial action, Plaintiffs' posting claims must be dismissed. To hold otherwise would frustrate the purpose of the collective bargaining process and "be completely at odds with the basic policy of national labor regulation to promote the arbitral process." *Teamsters v. Lucas Flour Co., supra,* 369 U.S. at 105, 82 S.Ct. at 578.

■ With respect to Plaintiffs' claims predicated upon statements in Defendant King's grievance, the filing of that grievance occurred more than a year prior to this lawsuit being filed. Another pre-requisite of a § 301 claim is that it be brought within six months after the actions complained of occurred. *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). By application of *Del Costello,* Plaintiffs claims predicated upon the King grievance are time-barred and, accordingly, must be dismissed.

■ Even assuming *arguendo* that Plaintiffs' could overcome the time limitation and grievance procedure compliance deficiencies, the Court has reviewed the CBA provisions discussed above regarding the privilege and justification issues presented in Plaintiffs' claims of defamation and intentional infliction of emotional distress, and the Court finds that those provisions clearly establish that

the union Defendants were cloaked with the qualified "duty/interest privilege" and acted entirely in compliance with their duties as set forth in the CBA in posting the NLRB Notice and explanatory letters on the union bulletin boards.

The Court finds that because the union membership would be subject to the CBA interpretation agreed upon by TRW and the UAW leadership as a result of the King's unfair labor practice charges, and further, it being the union members' dues that would be expended to pay for the King monetary settlement, the membership clearly had an "interest" in the information conveyed in the contested postings, and the Court finds that, under the CBA, the Union had a duty to inform its membership about these King settlement matters.

Because Defendants were cloaked with a qualified privilege, to go forward with his claim of defamation with respect to the postings, Crawford would have to demonstrate that the statements complained of in the postings were made with "actual malice", i.e., with knowledge of their falsity or in reckless disregard of the truth. *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Plaintiffs have not met this burden.

With respect to statements contained in the King grievance, statements made in the context of a grievance procedure are also privileged. *See Hasten v. Phillips Petroleum Co.*, 640 F.2d 274 (10th Cir.1981); *Green v. Hughes Aircraft Co.*, 630 F.Supp. 423 (S.D.Cal.1985). As with the posting statements, Plaintiffs have not presented any evidence to overcome the privilege protecting King's grievance statements, either.

For the foregoing reasons, the Court will grant summary judgment in favor of the Defendants on Counts I and III, and Plaintiffs' claims of defamation and intentional infliction of emotional distress will be dismissed.

8. Because the Court finds that Plaintiffs made a good faith argument for non-preemption, Defen-

The only remaining claim in Plaintiffs' Complaint (Mrs. Crawford's Count II claim of loss of consortium) is wholly derivative of Jerry Crawford's case. Since Jerry Crawford's claims do not succeed, Mrs. Crawford's derivative loss of consortium claim cannot succeed, either. *Summers v. Sears, Roebuck & Co.*, 549 F.Supp. 1157 (E.D.Mich.1982); *Moss v. Pacquing*, 183 Mich.App. 574, 455 N.W.2d 339 (1990); *Oldani v. Lieberman*, 144 Mich.App. 642, 375 N.W.2d 778 (1985). Therefore, Count II of Plaintiffs' Complaint will be dismissed, as well.

## IV. CONCLUSION

For all of the reasons set forth in this Opinion and Order,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendants' Motions for Summary Judgment be, and hereby are, GRANTED, and this case, accordingly is DISMISSED in its entirety with prejudice.[8]

Let Judgment be entered accordingly.

dants' request for Rule 11 sanctions is hereby DENIED.