**Bernice MORRIS, Plaintiff,**

v.

**AMBASSADOR NURSING HOME, INC.**
d/b/a Pembroke Nursing Center, Martha
Little, Pam McCants and Janice Morris,
jointly and severally, Defendants.

Civ. A. No. 93–75153.

United States District Court,
E.D. Michigan, S.D.

Feb. 25, 1994.

Donald A. Gilbert, Masud and Gilbert, P.C., Saginaw, MI, for Janice A. Morris.

Carole F. Youngblood, Williams & Youngblood, Detroit, MI, for Bernice Morris.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REMAND

GADOLA, District Judge.

On November 5, 1993, plaintiff filed an action in Wayne County Circuit Court. Defendants filed a petition for removal December 10, 1993. On December 23, 1993, plaintiff filed the instant motion to remand. Defendants filed a response to the motion on January 13, 1993. No reply was filed. Oral argument was heard February 23, 1994.

### I. Facts

Plaintiff began working as a nurses aide for Ambassador Nursing Home, Inc. ("Ambassador") on December 14, 1988. While

employed at Ambassador, plaintiff was a member of the Service Employees International Union, Local 79 ("the Union"). The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement ("CBA") between the Union and Ambassador.

On March 28, 1992, defendant Janice Morris claimed she was a witness to plaintiff verbally and physically assaulting a patient. Thereafter, defendant Pam McCants, the Director of Nursing, and defendant Martha Little, the Administrator, allegedly conducted an investigation which included interviewing Morris and the patient. Following the investigation, plaintiff was discharged from her employment at the Ambassador Nursing Home on April 1, 1992.

In accordance with Ambassador's employee policy and with the Nursing Home Chapter of the Michigan Public Health Code, Mich.Comp.Laws Ann. 333.21771(2),[1] Ambassador notified the Michigan Department of Public Health ("the DPH") of the alleged abuse of a patient. The DPH subsequently conducted an independent investigation and found that the allegation could be substantiated by witness testimony. On October 14, 1992, the DPH issued a civil penalty order assessing a fine of $100.00 against Ambassador and in favor of the patient. On July 1, 1992, the Michigan Attorney General's office commenced criminal proceedings against plaintiff, which proceedings were subsequently dismissed. In connection with the investigations, defendant Martha Little provided information to the DPH and the Attorney General.

The DPH conducted an administrative hearing on March 4, 1993, to determine whether or not plaintiff should continue to be licensed as a nurse's aide. The only persons attending this hearing were the plaintiff and the administrative law judge. The hearing concluded with a ruling in plaintiff's favor.

On November 5, 1993, plaintiff filed the instant action in Wayne County Circuit Court. Plaintiff alleges seven counts in her complaint: (1) tortious interference with employment relationship and conspiracy to interfere with employment relationship; (2) negligent hiring, supervision and retention of the individual defendants; (3) negligent and/or intentional infliction of emotional distress; (4) libel and slander; (5) negligence in the investigation and general handling of the allegations against plaintiff; (6) common law conspiracy; and (7) malicious prosecution. Defendants removed the action to federal court claiming that all of plaintiff's claims[2] are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because the CBA between Ambassador and the Union contains provisions which address the course of conduct the employer is to follow in the event an employee is accused of abusing a patient. In her motion to remand, plaintiff on the other hand, claims that the allegations of her complaint do not implicate the terms of the CBA.

The CBA provides that

The Employer has the right to make and establish reasonable rules of conduct for employees while on Employer property and to fix and determine the penalties of violation thereof. The Union and its members agree to adhere to and be governed by all rules and regulations not in conflict with the Agreement.

Exhibit A to Defendants' Response at 3–4. Ambassador maintains a 22–page Employee Personnel Policies manual. The manual provides that

[a]ny incident or suspected incident of abuse[3] must be reported to the Director of

---

1. This law provides:

   A nursing home employee who becomes aware of an act prohibited by this section immediately shall report the matter to the nursing home administrator or nursing director. A nursing home administrator or nursing director who becomes aware of an act prohibited by this section immediately shall report the matter by telephone to the department of public health, which in turn shall notify the department of social services.

2. Defendants conceded at oral argument that Count Seven, for malicious prosecution, is not preempted. Defendants presented no written argument with respect to this count.

3. "Abuse" is defined in the employee manual as "[a]ny physical action directed at patients, such as assault, unnecessary roughness in physical handling, or sexual contact with a patient." Exhibit C to Defendants' Response at 14.

Nursing or Administrator immediately and they shall in turn contact the Michigan Department of Public Health ...

Exhibit B to Defendants' Response at 1.

## II. Analysis

The Labor Management Relations Act ("LMRA") provides that federal courts shall have jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations." 29 U.S.C. § 185(a). The Supreme Court has interpreted the LMRA broadly as a preemptive statute that authorizes the federal courts to develop a uniform body of federal substantive law governing the enforcement of collective bargaining agreements. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983); *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957).

In evaluating whether state law tort claims are preempted by federal law, the Supreme Court has held that a district court need only determine whether resolution of the plaintiff's state law claim requires interpretation of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). *See also, Electrical Workers v. Hechler*, 481 U.S. 851, 858–59, n. 3, 107 S.Ct. 2161, 2166–67, n. 3, 95 L.Ed.2d 791 (1987) (LMRA preemption occurs when the plaintiff's claims are "substantially dependent on analysis of a collective-bargaining agreement."); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) (state law is preempted when evaluation of a state law claim is "inextricably intertwined with consideration of the terms of [a] labor contract."). Thus, the court must review plaintiff's state law claims to determine if their resolution is dependent upon a reading of the CBA.

Plaintiff's first claim, against the individual defendants, is for tortious interference with employment relations. The Sixth Circuit Court of Appeals has held that the LMRA preempts a state law claim of tortious interference with contractual relations if breach of contract is an essential element of the state law claim. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir.1990). In Michigan, because a plaintiff must show that the tortfeasor's interference induced a breach, breach of contract is an essential element of a tortious interference claim. *Northern Plumbing & Heating, Inc. v. Henderson Bros., Inc.*, 83 Mich.App. 84, 93, 268 N.W.2d 296 (1978). Thus, in the instant case, resolution of plaintiff's first claim will require the court to interpret the collective bargaining agreement to determine if that agreement has been breached. Therefore, plaintiff's first claim is preempted by the LMRA.

Plaintiff's second, third, and fifth claims assert that defendants are guilty of various forms of negligence. To establish any form of negligence, plaintiff must show first, that a defendant had a duty or obligation to the plaintiff to avoid negligent conduct and second, that defendant breached that obligation. *Moning v. Alfono*, 400 Mich. 425, 437, 254 N.W.2d 759 (1977).[4] In order to determine whether there was a breach of the obligation, it is necessary to ascertain the nature of the obligation, that is, what the defendant must do or not do to satisfy the duty. *Id.* at 437–38, 254 N.W.2d 759, *citing Prosser, Handbook of the Law of Torts* § 53, at 324 (4th ed. 1971).

Plaintiff's second claim, against Ambassador only, alleges negligent hiring, supervision and retention of the individual defendants. The nature of Ambassador's obligation to plaintiff with respect to its hiring, supervision and retention of the other defendants is governed by the CBA by virtue of its reference to Ambassador's policies for employee conduct and discipline. Ambassador's

---

**4.** If these two elements are established, plaintiff must also establish the third and fourth elements of a negligence claim, causation and damages. *Id.*

employee policy manual sets forth the parties' rights and duties in the context of their employment relationship. Thus, resolution of plaintiff's second count also requires interpretation of the CBA (as it adopts Ambassador's employee manual policy).

■ Plaintiff's third claim, against Ambassador only, alleges negligent and/or intentional infliction of emotional distress. The majority of cases addressing the issue of whether intentional infliction of emotional distress against an employer is preempted by the LMRA, have held that preemption is proper. *See e.g. Miller v. AT & T Network Systems*, 850 F.2d 543, 550 (9th Cir.1988) (claim of intentional infliction of emotional distress held preempted because reasonableness of defendant's conduct must be judged in light of what the collective bargaining agreement permits); *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1148–49 (9th Cir.1988) (intentional infliction of emotional distress claim based upon discharge held preempted by Section 301); *Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir. 1988) (plaintiff's claim of intentional infliction of emotional distress based on her supervisor's investigation of plaintiff's suspected role in harassing another employee held to be preempted by Section 301); *Johnson v. AT & T Technologies, Inc.*, 713 F.Supp. 885, 887 (M.D.N.C.1989). The facts of the *Willis* case, *supra*, are analogous to the facts in this case in that Willis' intentional infliction claim was based upon the defendant company's investigation of plaintiff's alleged involvement in wrongdoing while on the job.

In Michigan, a claim of intentional infliction of emotional distress requires a plaintiff to prove, as an essential element of her claim, that the defendant's conduct was "extreme and outrageous." *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 682, 374 N.W.2d 905 (1985). Claims such as these are preempted because evaluating the outrageousness, or lack thereof, of the employer's handling of the investigation involves an interpretation of the CBA. *Crawford v. TRW, Inc.*, 815 F.Supp. 1028, 1035 (E.D.Mich.1993) (Rosen, J.). Thus, plaintiff's third claim also is preempted.

■ Plaintiff's fourth claim, against all defendants jointly and severally, alleges libel and slander. In order to establish a *prima facie* claim of defamation under Michigan law, a plaintiff must prove four elements:

(1) a false and defamatory statement concerning plaintiff;

(2) an unprivileged communication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; and

(4) either that the statement was defamatory *per se* by its very nature, or that it was defamatory *per quod* because it caused the plaintiff special harm by virtue of the plaintiff's particular circumstances.

*Id., citing Morganroth v. Whitall,* 161 Mich. App. 785, 789, 411 N.W.2d 859 (1987). With respect to the second element relating to whether the communication was privileged, the court finds again that it must look to the CBA.

Michigan recognizes a qualified privilege which

extends to all communications made in good faith upon which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character or imperfect obligation.

*Id., citing, Merritt v. Detroit Memorial Hosp.,* 81 Mich.App. 279, 284–85, 265 N.W.2d 124 (1978). In this case, the issues relating to whether the defendants communications regarding plaintiff were privileged requires an interpretation of the CBA. The policies of the employer incorporated in the CBA by Article V adopt the requirement of Michigan law that any suspected incidents of patient abuse in the nursing home setting must be reported to the facility's supervisors or administrators and to public health officials. Thus, the court finds that plaintiff's fourth claim for defamation also is preempted by the LMRA.

■ Plaintiff's fifth claim, against all defendants, alleges negligence in the investigation and general handling of the allegations against plaintiff. As discussed *supra,* the

second element of a negligence claim, breach of duty, requires an investigation into and analysis of the nature of the defendants' obligation to plaintiff. *Alfono*, 400 Mich. at 437–38, 254 N.W.2d 759, *citing Prosser, Handbook of the Law of Torts* § 53, at 324 (4th ed. 1971). In the instant case, such investigation and analysis consists primarily of an interpretation of the employee policies referenced by the CBA. Therefore, plaintiff's fifth claim is also preempted by the LMRA.

■ Plaintiff's sixth claim alleges that individual defendants engaged in a common law conspiracy with the purpose of defaming plaintiff and interfering with the business relationship between her and her employer. Because proof of the predicate acts alleged here require an interpretation of the collective bargaining agreement, as discussed *supra*, the conspiracy claim also is preempted by the LMRA.

■ Finally, the court finds that plaintiff's seventh claim for malicious prosecution should be remanded to the state court. Plaintiff alleges that defendants caused the Michigan Department of Public Health and the Attorney General of Michigan to institute proceedings against plaintiff, maliciously and without probable cause. In order to prove a claim of malicious prosecution against a defendant who is not a prosecutor but rather only the initiator of a prosecution by virtue of the defendant having passed information to the prosecutor, a plaintiff must establish that the defendant knew that the information provided to officials was false. *Renda v. International Union, UAW*, 366 Mich. 58, 86–87, 114 N.W.2d 343 (1966). It is not enough to establish mere negligence. *Id.* The qualified privilege doctrine applies only to communications made in good faith. *Crawford*, 815 F.Supp. at 1035. Certainly, where there is a specific intent to cause plaintiff harm by passing false information, the qualified privilege doctrine would not apply. Therefore, because resolution of the claim of malicious prosecution does not require interpretation of any portion of the CBA, the claim is not preempted.

■ The court could retain Count Seven under its pendent jurisdiction. The court, however, is not so inclined. The decision to exercise pendent jurisdiction over state law claims is within the sound discretion of the court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In exercising its discretion, the court must look to "considerations of judicial economy, convenience and fairness to the litigants" and avoid needless decisions of state law. *Id.* at 726, 86 S.Ct. at 1139. Recent litigation in the federal courts involving federal law claims together with pendent state law claims has caused procedural and substantive problems. Although the federal and state claims in this action arise out of the same factual situation, litigating these claims together may not serve judicial economy or trial convenience. Because federal and state law each have a different focus, and because the two bodies of law have evolved at different times and in different legislative and judicial systems, in almost every case with pendent state claims, the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding. Accordingly, Count Seven of plaintiff's complaint shall be remanded to the state court.

### III. Conclusion

At oral argument, plaintiff's counsel argued strenuously that she did not intend to allege federal claims or to litigate plaintiff's case in federal court. Indeed, counsel for plaintiff even offered to stipulate that the CBA was not involved in any of plaintiff's claims. The Supreme Court has held that although

'the party who brings a suit is master to decide what law [s]he will rely upon,' it is an independent corollary to the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.

*Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. at 2853, *citing, The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Thus, regardless of whether or not plaintiff *intended* her claims to involve an interpretation of the CBA, resolution of six of her claims do re-

**1170**

quire such interpretation. Therefore, the removal of those claims must stand.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion to remand is **DENIED IN PART and GRANTED IN PART.**

It is further **ORDERED** that plaintiff's motion to remand, as it pertains to Counts One through Six of plaintiff's complaint is hereby **DENIED.**

It is further **ORDERED** that plaintiff's motion to remand, as it pertains to Count Seven of plaintiff's complaint, is hereby **GRANTED.**

It is further **ORDERED** that Count Seven of plaintiff's complaint, charging defendants with malicious prosecution, is hereby **REMANDED** to the Wayne County Circuit Court.

**SO ORDERED.**